# OCTOBER, 1938

INTERNATIONAL-GREAT NORTHERN RAILROAD COMPANY v. R. M. HAWTHORNE.

No. 7084.   Decided May 25, 1938.
Rehearing overruled October 5, 1938.
(116 S. W., 2d Series, 1056.)

*John A. Newsom, Sewell, Taylor, Morris & Garwood,* and *Andrews, Kelley, Kurth & Campbell,* all of Houston, for plaintiff in error.

On the question of negligence: Missouri, K. & T. Ry. Co. v. Collier, 157 Fed. 247; Chesapeake & O. Ry. Co. v. Nixon, 271 U. S. 218, 46 Sup. Ct. 495, 70 L. Ed. 914; Biernacki v. Pennsylvania Ry. Co., 45 Fed. (2d) 677, certiorari denied 283 U. S. 841, 51 Sup. Ct. 488, 75 L. Ed. 1451.

*Jones & Jones,* of Marshall, and *B. R. Reeves,* of Palestine, for defendant in error.

On the question of negligence: Missouri Pac. Ry. Co. v. Guillory, 28 S. W. (2d) 283; Davis v. Christensen, 247 S. W. 303.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

In the trial court defendant in error Hawthorne had judgment against plaintiff in error International-Great Northern Railroad Company for damages for personal injuries sustained by him as the result of a head-on collision between a locomotive in which he was riding and another locomotive pulling a regular north-bound passenger train of the railroad company. Hawthorne was the fireman on the engine in which he was riding and received his injuries when he leaped therefrom just prior to the collision. The Court of Civil Appeals affirmed the trial court's judgment. 90 S. W. (2d) 895.

The train upon which Hawthorne was riding was called an extra train, but consisted only of an engine and tender. It was being run from Palestine to Taylor to be used in interstate commerce, and it is agreed that liabilities are to be determined by the Federal Employer's Liability Act. The collision occurred between Buffalo and Jewett, two stations on plaintiff in error's

line. These stations are located about ten miles apart and there is no sidetrack between them. The train with which the engine collided was known as train No. 4 and was a regular passenger train running on a regular schedule. According to the rules of the company that train had the right of way and it was the duty of those in charge of the extra train to go upon a sidetrack and permit the regular train to pass. The crew of the extra train consisted of a conductor, engineer and fireman. The conductor rode in the cab with the engineer and fireman and was in charge of the train. The regular passenger train was due at Jewett at 8:05 P. M. and at Buffalo at 8:25 P. M. The conductor misread the time table. It plainly disclosed that the regular train was due at Jewett at 8:05 and he read it as 8:25. Had the train been scheduled to pass Jewett at 8:25, as the conductor read it, then there was ample time to make the siding at Jewett before the regular train was due to arrive there. Accordingly the extra did not take the sidetrack at Buffalo but proceeded on toward Jewett. The collision occurred about half way between Buffalo and Jewett.

Error is assigned to the refusal of the trial court to direct a verdict in favor of the railroad company. The contentions are that such instruction should have been given on two grounds: first, because Hawthorne was injured as a direct and proximate result of his failure to perform certain positive and primary duties imposed upon him by the rules of the company; and, second, because, as a matter of law, he assumed the risk of injury.

Various acts of Hawthorne claimed by the railroad company to constitute contributory negligence were submitted to the jury, all of which were answered in Hawthorne's favor. Other issues embodying elements of assumed risk were submitted and these, too, were answered in his favor. The contention pressed here is that on these defenses there were no issuable facts, but that a peremptory instruction should have been given in favor of the railroad company. This is the second time this case has reached this Court. Upon the first trial a peremptory instruction was given in accordance with the theories of the railroad company and judgment rendered that Hawthorne take nothing. The case was appealed to the Court of Civil Appeals at Waco and in an opinion reported in 63 S. W. (2d) 243, these contentions were overruled. That court accordingly reversed the judgment of the trial court and remanded the cause thereto for another trial. An application for writ of error from that decision was duly prosecuted and was by this Court refused. We have inspected that application and find that the question of the

right of the railroad company to a peremptory instruction was forceably presented therein. By refusing the application this Court approved the holding of the Court of Civil Appeals and disallowed the contentions of the railroad company. We are still of the opinion that the Court of Civil Appeals correctly decided this question, and all assignments presenting it anew in this appeal are overruled.

The principal question presented for decision on this appeal relates to the manner in which negligence was submitted to the jury. In his petition, Hawthorne pleaded generally that the conductor and engineer "did so operate said locomotive as to bring the same into collision with another locomotive moving in an opposite direction as a proximate result of one or all of the following acts of negligence." The so-called specific acts of negligence were alleged as follows:

"(a) Said employees negligently failed to observe the rules and/or regulations of the defendant governing the operation of trains, in that they operated said locomotive past the station of Jewett on the main line of the defendant at such a time and in such a manner as that said engine would occupy such main line of the defendant when a north bound and regularly scheduled train of defendant was, by the rules, regulations, and/or orders of defendant, designated to occupy said main line.

"(b) In that said agents, servants, and employees of defendant did negligently operate said locomotive past the last station north of the point of collision, at such a time that the same could not reach the next station and/or passing track south of said station before said regularly scheduled train of defendant left the same.

"(c) In that said agents, servants and employees negligently and carelessly failed to observe what is commonly called a time card which was furnished them by the defendant for the government and operation of trains, and particularly the locomotive in question, and/or did negligently and carelessly misread or misinterpret said time card, thereby causing such locomotive to be at a place where said regularly scheduled train was due at the time of the collision."

The court submitted but one issue as to the negligence of the railroad company which was as follows:

"SPECIAL ISSUE No. 1. Do you find from a preponderance of the evidence that the engnieer and conductor on the Southbound train were guilty of negligence in causing the trains to be brought together?"

The following objection was timely made to that issue:

"The defendant excepts and objects to Special Issue No. 1 contained in the court's charge, for the reason that same is not raised by the pleadings or the evidence; and the defendant further excepts and objects to said special issue because the same is too general and is not responsive to the pleading, in that the plaintiff has plead specific acts of negligence in their petition, as to the conductor and engineer, and the submission of said Special Issue in the form in which it appears in the Court's Charge would allow the jury to take into consideration acts of negligence other than those specifically plead in the plaintiff's petition, and would allow the jury to go outside the pleadings and the evidence in order to answer said issue."

**1** The rule is that it is improper to submit negligence in general terms over the objection of the opposite party in a case where specific acts of negligence are pleaded and relied upon. An analysis of the so-called specific acts of negligence alleged in the petition discloses that the principal act complained of was the act of the conductor and engineer in misreading and misinterpreting the time table. The other acts complained of were but incidents or results of that failure. If the evidence raised an issue of fact as to whether that act of negligence existed, the question submitted to the jury should have related specifically thereto, but this record presents the unusual situation of there being no issue of fact as to this specific act of negligence. The railroad company placed its conductor upon the witness stand, thereby vouching for him. He testified that he misread the time table; that it disclosed that the regular train was due at Jewett at 8:05 and he read it 8:25. To quote his language: "It was 8:05 at Jewett and I read it 8:25; it was 8:25 at Buffalo and I misread it for Jewett instead of Buffalo and I was mistaken." He was asked this question: "If you had looked at your time table properly and had known the time that No. 4 left Jewett, as it was your duty to do, you would have known that this train should have gone off the main line at Buffalo?" To which he replied: "That is where we should have gone into the siding, yes sir." Reasonable minds cannot differ on the question of whether this act of the conductor in misreading his time table was negligence. He testified that it was a mistake. He was in charge of the train and his mistake was the mistake of the railroad company. It was Hawthorne's contention at the conclusion of the testimony that no issue of negligence should be submitted to the jury, but only issues as to the railroad company's defenses and as to the damages. The trial judge

would have committed no error had he adopted Hawthorne's theory and omitted entirely the issue of the railroad company's negligence from the charge.

**2** Negligence to be actionable must be the proximate cause of the injury, but there is no fact issue of proximate cause in this case. Had the conductor correctly read his time table, of course he would have taken the siding at Buffalo. His failure to do so would have constituted a wilful act, and it is not, and could not be, contended under this record that the conductor would have heedlessly and wilfully caused this head-on collision, had he correctly read his time table. There is no room for reasonable minds to differ as to this.

These conclusions render it unnecessary for us to discuss the reasoning followed in the opinion of the Court of Civil Appeals in disposing of the questions presented by the assignments now under review. We base our holding upon the ground that one of the specific acts pleaded was established, as a matter of law, to be negligence and a proximate cause of the injuries, and not upon the theory adopted by the Honorable Court of Civil Appeals.

What is written next above disposes of the assignments which complain of the refusal by the trial judge to submit certain special issues to the jury inquiring whether the contributory negligence of Hawthorne was the sole proximate cause of his injuries. We could not hold, as a matter of law, that the conductor's negligence was a proximate cause of the injuries if the evidence raised an issue of fact as to whether Hawthorne's negligence was the sole proximate cause thereof. If the evidence raised a fact issue as to whether Hawthorne's negligence was the sole proximate cause, it raised also a fact issue as to whether the conductor's negligence was a proximate cause at all. We have held that it was a proximate cause as a matter of law from which it follows that this block of assignments should be overruled.

The trial judge in his charge to the jury gave an approved definition of proximate cause, including therein the phrase "new and independent cause." That phrase was then itself defined, and one of the assignments complains of the definition. Obviously, in view of the holdings above made, this assignment presents a question which has become immaterial. Our decision does not rest upon a jury finding of proximate cause.

**3** Error is assigned to the order of the trial court in overruling the railroad company's motion for a new trial based upon misconduct of the jury. Eight jurors testified upon the hearing of

the motion. We have carefully read and reread all of their testimony. It probably establishes that at some time before the jurors separated mention was made by some unidentified juror of the fact that the plaintiff would have to pay a part of his recovery to his attorneys, but a careful consideration of the testimony leads to the conclusion that a fact issue was presented as to whether this mention was made before or after the verdict was returned into court. Of course, a discussion by the jurors among themselves after they had returned their verdict into court would not constitute misconduct. Where the evidence of the jurors presents a question of fact as to the existence of misconduct this Court is bound by the finding of the trial court on that issue the same as it is upon any other fact issue. This is well settled. Casstevens v. Texas & Pacific Ry. Co., 119 Texas 456, 32 S. W. (2d) 637, 73 A. L. R. 89; Monkey Grip Rubber Company v. Walton, 122 Texas 185, 53 S. W. (2d) 770; Texas & Pacific Ry. Co. v. Gillette, 125 Texas 563, 83 S. W. (2d) 307.

Having determined that a fact issue was presented as to the existence of misconduct it becomes unnecessary to discuss the question about which much is written in the briefs as to whether a mere mention of attorney's fees followed immediately by a warning from the foreman not to consider that question would amount to material misconduct. In view of the contentions here presented, we do not think it improper to observe, however, that in the case of Texas & Pacific Railway Co. v. Gillette, supra, the record disclosed much more than a mere mention of attorney's fees followed immediately by a warning.

4 The assignment complaining that the judgment is excessive presents only a question of fact, of which question this Court has no jurisdiction. Texas & New Orleans Ry. Co. v. Neill, 128 Texas 580, 100 S. W. (2d) 348.

The judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court May 25, 1938.

Rehearing overruled October 5, 1938.