**AMES et al. v. HERRINGTON et al.**

No. 1934.

Court of Civil Appeals of Texas. Eastland.

Feb. 23, 1940.

Rehearing Denied April 12, 1940.

Conner & Conner, of Eastland, L. R. Pearson, of Ranger, Cantey, Hanger & McMahon, of Fort Worth, Malone, Lipscomb, White & Seay, of Dallas, and W. D. R. Owen, of Eastland, for appellants.

Turner, Seaberry & Springer, of Eastland, for appellees.

LESLIE, Chief Justice.

This is a suit by a former ward to collect money alleged to be due her estate by former guardians and their respective sureties. On arrival at the age of 14 years the minor, Doris Meekie Rice, selected Dr. W. Ross Hodges to be her guardian. He instituted this suit. Later she married J. P. Herrington and joined by him they were substituted as plaintiffs in this cause. They are appellees herein.

Each of the defendants denied liability and offered special defenses hereinafter considered. Trial before the court and jury resulted in a verdict and judgment against the former guardians and their respective bondsmen. These defendants appeal.

This litigation covers numerous transactions by different guardians through a term of years from September 29, 1922, until the institution and trial of this suit in 1937. So many transactions are involved and so many assignments of error presented only controlling points will be discussed.

Briefly the history of these probate proceedings and the instant suit is in sub-

stance as follows: September 20, 1922 W. H. (Ward) Rice died intestate, leaving a wife, Frona Rice, and daughter, Doris Meekie Rice, then two years of age. There was no administration of his estate, except the guardianship proceeding on the daughter's estate. December 17, 1922, the widow, Mrs. Frona Rice, married J. B. Ames. They separated April 20, 1933, and October 13, 1933, she instituted a suit for divorce and recovery of property alleged to belong to her and said daughter. Ames died February 6, 1937.

September 29, 1922, Mrs. Rice (Ames) instituted in the "County Court at Law of Eastland County" temporary guardianship proceedings on the estate of the daughter. The probable value of that estate was estimated at $25,404. On the same date, the court appointed the mother temporary guardian, and also named appraisers for the estate. October 2, 1922, an inventory and appraisement was returned and filed in the said court, and it showed cash on hand belonging to the minor $5,904, Liberty Bonds $15,900 and individual interest in real estate valued at $3,350. The first two items aggregate $21,804. The judge approved the inventory and appraisement and on November 14, 1922, entered an order making the temporary guardianship permanent. The same day Frona Rice, as principal, and the American Indemnity Company, as surety, executed a guardian's bond in the sum of $43,608.

This guardianship ran along with various expenditures by the guardian from time to time from the ward's estate until June 8, 1923, when the guardian Frona Rice applied to said "County Court at Law" to continue the guardianship proceedings in the name of Frona Ames, she having married J. B. Ames December 17, 1922. The guardianship was so continued.

July 2, 1923, the surety, American Indemnity Company, filed a petition in said County Court at Law to be released from any further liability on the bond executed November 14, 1922. An order releasing it was entered September 24, 1923. This bond is made the basis of recovery against the American Indemnity Company.

(This action by the surety company was precipitated by the following circumstances: When the Indemnity Company became surety on the said bond there was a joint agreement between it and Frona Rice whereby said company was permitted to take possession of $15,900 in Liberty Bonds for safe-keeping during the time it was on the bond. The Liberty Bonds matured. The surety company forwarded them to a bank at Ranger where Mrs. Ames resided that she might indorse them and thereby enable the Indemnity Company to cash the bonds. While they were in the bank at Ranger she instituted suit in Eastland County for the possession of the bonds. The Indemnity Company was impleaded and a trial resulted in a judgment ordering the delivery of the possession of the bonds to the guardian, and also releasing the surety from further liability on the bond. The matters recited in this paragraph may not be material under the disposition made of this appeal, but they serve to keep in mind the events leading up to this litigation.)

After the Indemnity Company was released on September 24, 1933, Mrs. Ames, joined by her husband, J. B. Ames, as principal, with Frank Ames and Mrs. M. F. Ames, as sureties, executed a new guardianship bond in the sum of $39,000, on October 13, 1923. Additional sureties were required, however, and Frona Ames, joined by her husband as principal and S. P. Rumph and D. S. Rumph, as sureties, executed another guardianship bond in the sum of $39,000 on October 18, 1923.

Frank Ames and Mrs. M. F. Ames were not joined in this suit, and it is alleged that M. F. Ames is dead and that in any event both were insolvent. Neither were the Rumphs made parties, but it is alleged they were both dead, that they went through bankruptcy and their estates insolvent.

After the posting of the above bonds of October 13 and 18, the guardianship proceedings continued without interruption until November 28, 1928, when the Supreme Court of Texas, passing upon the validity of the law creating the "County Court at Law of Eastland County," held said court to be unconstitutional, and its acts and orders void. State v. Gillette's Estate, Tex.Com.App., 10 S.W. 2d 984.

Thereafter, Frona Ames, on February 18, 1930, again sought to be appointed guardian of her daughter's estate. This proceeding was in the regular probate court of Eastland County, Texas. She was so appointed March 7, 1930, and

March 12, 1930, she gave bond and took the usual oath. The inventory and appraisement offered and approved showed the value of the minor's estate at this time to be $4,835.35. A guardianship bond in the sum of $10,000 was executed by Mrs. Ames, with J. B. Ames, S. P. Rumph and J. E. Gilbert, sureties. (There were conflicting allegations and proof as to the capacity in which Ames signed this bond. The jury found he signed as surety.)

While the ward's estate was being administered under this last guardianship bond, Frona Ames sued J. B. Ames on October 13, 1933, for divorce, asking for division of community property, and seeking to recover from him personal and real property then held by him, but alleged to be in fact the property either of herself or of the minor daughter.

That cause, originally and primarily one for divorce, was No. 15,750, on the docket of the District Court, and will be so referred to in this opinion. Frona Ames individually and as such guardian on December 15, 1933, filed a third amended original petition in that cause. As stated, she sought to establish and recover extensive property rights on behalf of herself and her daughter, and during the trial of that case it appears that Frona Ames, or her attorney, concluded that in the capacities in which she was suing she was representing conflicting interests, in that she was asserting individual rights which clashed or conflicted with the rights and interests of her ward. Thereupon it became expedient, if not necessary, to have the interests of the ward represented by someone who could give primary consideration to the ward's interest as they were reflected or involved in that litigation.

At that stage of the litigation the regular probate court, acting upon application therefor, entered an order January 19, 1934, discharging Mrs. Ames as guardian of said estate on the ground that she had grossly mismanaged the same. And it is alleged in the instant suit that although Mrs. Ames was also ordered to account for the minor's estate coming into her hands she had failed to do so to the damage of the ward in the sum of $50,000.

In the same order D. L. Kinnaird was appointed guardian of said estate. January 20, 1934, he posted bond as such in the sum of $5,000 with the United States Fidelity & Guaranty Company as surety. (On May 21, 1937, he also was removed as such guardian on the ground that he had failed to obey the orders of the court directing him to file an inventory and appraisement of the ward's estate, etc.)

Following Kinnaird's appointment as guardian Mrs. Ames ceased to litigate as guardian of her daughter's estate, dropping the ward's interest from her petition. With the permission of the court, however, Kinnaird, as guardian, entered his appearance in that litigation, already in process of trial, and on January 19, 1934, filed in behalf of said ward a petition in intervention. Thereupon the litigation became more or less three-cornered and antagonistic, whether viewed from the standpoint of Mrs. Ames, her husband or the ward. That trial resulted in a judgment February 1, 1934, and no appeal was prosecuted therefrom. On the whole, the judgment was favorable to Mrs. Ames and the ward (intervener) and the elements of the judgment will be presently referred to.

In the instant appeal the appellants insist that the judgment in that cause, No. 15,750, is res adjudicata of the issues presented herein. This plea of res adjudicata is based upon the nature and scope of cause No. 15,750 as determined by the plea in intervention filed by the guardian Kinnaird in behalf of his ward.

In said petition in intervention it was alleged that Mrs. Ames, as guardian, took possession of the estate of the ward on November 14, 1922, and that it amounted at that time to approximately $35,000. That she managed the ward's estate with fair efficiency until she married J. B. Ames; that soon after such marriage she and J. B. Ames entered into a conspiracy to defraud and cheat the minor, Doris Meekie Rice, out of her property without giving her just recompense therefor. That, in the alternative, if such allegations be incorrect, then J. B. Ames by force, threats, fraud and misrepresentations induced Mrs. Ames to deliver into his hands the property belonging to the minor.

That Mrs. Ames took $5,300 belonging to the minor and put it in a lock box in a Ranger bank; that the box was in the possession of J. B. Ames who extracted the said money and used it for the erection of a house on lots 5 and 6, block

19, Ranger, Texas, and also used part of the money in his business of raising and marketing cattle, hogs and goats. That later, the house was destroyed by fire and the insurance money to the extent of $1,000 was likewise used by said Ames in his business. That on a date unknown to the intervener, Mrs. Ames took $750 and bought a diamond stick pin then in the possession of said J. B. Ames; that Mrs. Ames collected $2,800 insurance in 1932 on a house in Ranger in which the minor owned a $\frac{2}{3}$ interest. That this money was also invested in the stock business by J. B. Ames and Mrs. Ames and that their property so acquired by the use of funds belonging to the ward is and should be impressed with a trust in favor of the minor to the extent of $\frac{2}{3}$ of $2,800.

That Mrs. Ames as guardian came into possession of about $15,900 in Liberty Bonds belonging to the ward, converted the same into cash, deposited it in a Carbon bank, and thereafter withdrew and misappropriated substantially the entire amount. That she withdrew $316.49 with which to buy 113 acres of land in the William Frehl Survey in Eastland County, which was later sold to other parties, made defendants therein, and that the same was held in trust by them for the ward. That the remainder of said $15,900 was from time to time on dates and in amounts unknown to intervener withdrawn and used in trading, raising and marketing hogs, cattle and other livestock and also in acquiring and caring for other property, all alleged to be claimed as community and/or separate property of Mr. and Mrs. J. B. Ames, which said property was alleged to be impressed with a trust for the benefit of said minor to the extent of the amount so misappropriated and invested.

That about December 22, 1923, the guardian and J. B. Ames entered into a conspiracy to take from the minor $416 belonging to her by pretending that an expenditure of that amount was made for the hire of a nurse for the care and attention of said minor for a year; that in truth and in fact the money was used for no such purpose, but expended in the cattle business.

The above cause, No. 15,750, was tried before the court and jury, and numerous special issues submitted. Among other things, the jury found that $4,250 of the money used by J. B. Ames in his cattle business belonged to the ward, and that it was procured by him from Mrs. Ames. It was also decreed that said minor should have a first and prior lien on all the community property of J. B. Ames and wife for the collection of that amount. Under the order of the trial court, all the community property of J. B. Ames and Mrs. Ames, as established by that litigation, was placed in the possession of the court through a trustee (L. H. Flewellen) duly appointed for that purpose. This property, as will hereinafter be noticed, was later bid in jointly by Doris Meekie Rice through her guardian, Kinnaird, and Mrs. Frona Ames.

Said judgment (15,750) also established for the ward an unsecured claim against J. B. Ames and wife, the sum of $2,090 for rent on a house known as the Cherry Street residence, alleged to belong in part to the ward, but the court, after merely fixing such amount, denied recovery for the same, and stated that such order was without prejudice to the rights of the minor to recover the same in a specific action therefor in a proper court. As stated, no appeal was prosecuted from this judgment.

This same judgment also provided for recovery by Mrs. Ames against J. B. Ames of the sum of $10,377.02, by way of reimbursement for personal funds belonging to her and appropriated by him and the judgment gave her a second lien on said community property. The proceeds of the sale of said property realized by the trustee were to be applied as follows: (1) to the payment of costs, (2) to the $4,250 due the ward, (3) $10,-377.02 due Mrs. Ames, and (4) balance, if any, divided equally between Mr. and Mrs. Ames as their community property.

The above judgment in 15,750 disposed of a multitude of issues involving property rights of these litigants and after specifically disposing of the same that decree concluded in this language: "except as herein adjudged, it is ordered that the respective parties herein take nothing by reason of this suit." The claims and counterclaims not specifically disposed of were thus disposed of in general terms.

Obviously, the instant suit, as well as cause No. 15,750, wherein the minor intervened, were attempts to trace the affairs and fix the property rights of the minor's

estate from the very inception of the first guardianship in 1922 down to the time of these suits and the respective judgments therein, the former dated February 1, 1934, and the instant one June 4, 1938. As to the scope of the first suit (15,750) Frank Sparks, who represented Kinnaird as guardian in his intervention in behalf of the minor, testified in the instant case as follows: "Do you recall whether or not in that divorce trial it was undertaken to be established and traced every dime from every source by reason of waste or otherwise of the property or money that belonged to Doris Meekie Rice? A. Yes, that was my business in the case." This testimony was not objected to, and it apparently reflects an interpretation of cause No. 15,750 which is believed to be in harmony with the record in that case as it appears in the statement of facts in the present one.

Summarizing briefly, cause No. 15,750, based on the plea in intervention, was essentially one for devastavit or waste and wrongful use of the minor's estate by her guardian, Frona Ames, and J. B. Ames. The petition embraced her whole estate coming into the hands of her mother by whatever means and covered the entire time from the beginning of that administration to the date of the judgment in that cause. As to the ward, that suit was predicated upon a breach of duty upon the part of the guardian of her estate.

Further, through her new guardian, Kinnaird, she sought to recover the title and possession of property into which she alleged her money had been wrongfully invested, and in that connection she alleged that in the event her money and the assets of her estate had been so invested, mixed and commingled with the community property of J. B. Ames and wife that it could not be specifically traced, then she sought to have such property impressed with a trust in her behalf and a first lien fixed thereon to secure the repayment to her of the estate which had been thus dissipated or wrongfully invested. Having achieved that purpose as evidenced by the results of that suit and procured the sale of all community property of J. B. and Frona Ames through the trustee's sale and said property having been dissipated, lost or appropriated by her mother or through the neglect of a subsequent guardian, such relief is not sought in the instant suit. The appellee herein now seeks to recover the value of said property.

In her plea in intervention the appellee alleged that the value of her estate aggregated the full amount of the same as fixed at the time of her father's death or the filing of the first inventory and appraisement of her estate.

In view of other conclusions presently to be expressed we here state that it is our opinion that if any items of loss to the ward's estate or incident to that administration were left out of cause No. 15,750, or not specifically mentioned therein, such items being incident to such cause of action could and should have been embraced therein, otherwise the proceeding would have amounted to splitting up a legitimate cause of action; and a study of the record does not suggest that such was done. Discussing the legal effect of splitting up a cause of action, it is said in Stark v. Starr, 94 U.S. 477, 485, 24 L. Ed. 276: "It is undoubtedly a settled principle that a party seeking to enforce a claim, legal or equitable, must present * * * all the grounds upon which he expects a judgment in his favor. He is not at liberty to split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which special relief is sought, and leave the rest to be presented in a second suit, if the first fail. There would be no end to litigation if such a practice were permissible."

Attention will now be more particularly addressed to the issues of the instant suit. The appellee herein alleged the death of her father W. H. Rice September 20, 1922, and that her mother, Frona Rice (now Ames) took the oath and gave bond with the American Indemnity Company, as surety, November 14, 1922, the same date as alleged in the intervention in the divorce suit. This and other guardianships in the estate were specifically alleged. The appellee alleged the value of her estate at the time of her father's death to be $25,404, consisting of cash $8,856, approximately $15,900 in government bonds, and certain real estate. She also alleged the invalidity of the probate proceeding in the "County Court at Law of Eastland County" and especially that the discharge and release of the Indemnity Company by said court was void, (a matter deemed immaterial under

the disposition made of this appeal). She also alleged the judgment in a certain suit by Mrs. Ames against appellee to recover lot 9, block 14, Hodges Oak Park Addition of Ranger, Texas, was void and asked rentals upon the same in the amount of $30 per month from 1922 to 1932. That a house on said lot was destroyed by fire in 1932 and Mrs. Ames collected $5,000 insurance upon the same, for which the appellee seeks recovery.

She further alleged that Mrs. Ames qualified again as guardian of her estate in 1930 in the County Court of Eastland County, and set out the inventory and appraisement filed therein and that she (Mrs. Ames) was subsequently removed as such guardian on January 19, 1934, at which time Kinnaird was appointed guardian. In conclusion the appellee alleged that she was damaged in the gross sum of $50,000 and that since she was unable to allege what portion of the devastavit of Mrs. Ames occurred at any particular time, she made all solvent sureties upon the various bonds parties to this suit.

The appellee sought recovery against Kinnaird and his surety on the ground of his failure to collect the judgment of $4,250 secured in cause No. 15,750, and also for his failure to collect the $2,090 claim (for rents) mentioned in said judgment, but for which no enforcible decree was given, as above set out.

Further, in the instant suit recovery was sought against L. A. Hightower, administrator of the estate of J. B. Ames, both as surety upon the guardianship bond of Mrs. Ames and for rents upon what was known as the spring pasture, as well as for the item of $2,090. All the recovery sought against Mrs. Ames, the American Indemnity Company and J. E. Gilbert is based upon occurrences and transactions prior to February 3, (1) 1934, (date of judgment in 15,750). The same is true with respect to Hightower, administrator, except for the period between February 3 (1), 1934, and February 6, 1937 (Ames' death). For this period the rents on spring creek pasture of 257 acres were found to be 25¢ per acre per year, and ⅔ of ½ of such amount represents the ward's interest therein, the same aggregating approximately $64.26, an individual obligation of J. B. Ames, deceased.

 Cause No. 15,750 as affected by the plea in intervention was undoubtedly a suit for devastavit of the minor's estate and all consideration given the record in the instant case necessarily leads to the conclusion that it covers the grounds extended over by the prior suit. Res adjudicata is the answer to the appellee's suit against Frona Ames, the principal in said bonds, and it operates to exonerate her sureties from the liability asserted against them. In the absence of liability of the principal there can be no liability of the sureties.

 There is no question about the effect of this rule of law when applied to a proper state of facts and the facts here invoke the application of the rule. In Nichols v. Dibrell, 61 Tex. 539, it is stated thus: "It is well settled that the decision of a court of competent jurisdiction is conclusive not only as to the subject matter determined, but as to every other matter which the parties might have litigated in the case and which they might have had decided. * * * Or, as differently expressed, 'the plea of res judicata applies not only to points upon which the court was actually required to pronounce judgment, but to every point which properly belonged to the subject of litigation, and which the parties, by exercising reasonable diligence, might have brought forward at the time.'"

This rule of law has been frequently applied and was recently applied in Cain v. Balcom et ux., 130 Tex. 497, 109 S.W.2d 1044, 1045, in which it was stated thus: "This calls for an examination of the rules of law relating to the subject of res adjudicata. It is firmly established that, except as to strangers, the decision of a court of competent jurisdiction is conclusive not only as to the subject matter determined, but also as to every other matter which the parties might have litigated in the case, and which they might have had decided. Nichols v. Dibrell, 61 Tex. 539; Freeman v. McAninch, 87 Tex. 132, 27 S.W. 97, 47 Am.St.Rep. 79; 26 Tex.Jur. pp. 135, 136."

And it is further held in that opinion that under such circumstances: "The protection of such a decision, as well as its restrictions, extend not only to the immediate parties to the suit, but also to those who stand in privity with them. Privity, in this connection, means the mutual or successive relationship to the same rights of property; that is to say, all persons are privy to a judgment whose succession to the rights of

*property therein* adjudicated are derived through or under one or the other of the parties to the action, and which accrued subsequent to the commencement of the action. Morrison v. Cloud (Tex.Civ.App.) 13 S.W.2d 735, and authorities there cited."

This opinion is believed to be in point on the contention here urged by the American Indemnity Company, and especially so, since that company cannot be held liable without primary liability upon the part of the principal.

Other authorities sustaining the plea of res adjudicata under the facts of this case are Houston Terminal Land Co. v. Westergreen, 119 Tex. 204, 27 S.W.2d 526; City of Aurora v. West, 7 Wall. 82, 106, 19 L. Ed. 42; Tonn v. Inner Shoe Tire Co., Tex. Civ.App., 260 S.W. 1078; Connellee v. Magnolia Pet. Co., Tex.Civ.App., 54 S.W. 2d 577, par. 2–3; 26 Tex.Jur. p. 11, sec. 353 et seq.

■ The appellee takes the position that Kinnaird, her guardian, did not sue Mrs. Ames in cause No. 15,750 in her capacity as guardian, but only in her individual capacity, thereby rendering the principle of res adjudicata inapplicable. It is not believed that it was necessary to make the specific allegations in terms that she was so sued as guardian. The court is entitled to determine that question from the subject matter contained in the pleadings which, as pointed out, embraced and covered the entire administration of Mrs. Ames as guardian and also involved conspiracy and duress practiced by her husband upon the guardian during the entire guardianship period.

When Mrs. Ames took possession of the minor's estate November 14, 1922, it was by virtue of the probate proceeding and as guardian. When the guardian Kinnaird in 1934 brought suit against Mrs. Ames, he, by his pleading, commenced at the very beginning November 14, 1922, and attempted to trace all the minor's estate to the time of Mrs. Ames' removal on January 19, 1934, and, as pointed out, if the scope of the *petition in intervention needs any* bolstering on this point, the testimony of attorney Sparks, above set out, may be resorted to. It is not believed that the original suit by plea in intervention against Mrs. Ames under the circumstances could be anything other than a suit against her as guardian, and involving the property rights and claims originating in that relationship and fully embracing all phases thereof.

■ Assuming that Mrs. Ames at that time was sued in her individual capacity only, we are still of the opinion that this suit is determined by that one as affected by the plea in intervention. Every element involved in the present suit was involved in the divorce suit or intervention, and if not could have been litigated therein under the rules above set out. We do not think it could be successfully contended that one who is a guardian can be sued individually for property of a ward, forced to pay off a judgment therefor and then be sued again for the same subject matter as guardian simply because he was not sued as guardian in the first place, or not specifically designated as such in the pleadings.

Appellee asserts that a suit against **a** person in his individual capacity will not bar a subsequent suit against him in his capacity as guardian with regard to the same subject matter. We think that such a rule assumes that the person has a separate and distinct legal right in his representative capacity from that which he has in his individual capacity. Hardin v. Hardin, Tex. Civ.App., 1 S.W.2d 708. Further, it is elementary that if there be no liability on the part of the principal the surety would be without liability, and that is the state of facts we have under consideration.

■ When the appellee intervened in the divorce suit and attempted to trace her estate into the community estate of J. B. Ames and Frona Ames (former guardian) recovered a judgment therein for $4,250 and the property of said parties cast in the judgment was actually delivered into the court by J. B. Ames in an amount ($9,415) more than sufficient to pay such judgment to her, she (the appellee) elected to look to the property of the guardian and J. B. Ames rather than to personal liability on the guardianship bonds. Mosher Mfg. Co. v. Eastland W. F. & G. R. Co., Tex.Civ. App., 259 S.W. 253; Gerard v. National Bond & Mort. Corp., Tex.Civ.App., 86 S. W.2d 74. The remedy of following the property and seeking its recovery, either in its original or different form, is inconsistent with the remedy of suit on the official bond. A person is not allowed to sue for and recover both the property and its value. Prosecution of either remedy to its logical conclusion results in an election to forego the other. The authorities just cited announce and apply the rule.

■ Further, the fact that the sureties were not parties in the intervention

suit is immaterial; at least not controlling. Their liability as stated is only secondary aand does not exist in the absence of the primary liability of the principal. If recovery of the judgment and satisfaction thereof has been secured as against the principal, the fact that the sureties were not parties does not prevent the judgment from being a bar to a subsequent suit upon the same subject matter. The rule that the judgment against the principal will not bar a subsequent suit against the sureties on the official bond, presupposes the nonsatisfaction of the prior judgment. McKee v. Price, 3 Willson Civ.Cas.Ct.App. § 335; 34 C.J. 853, note 20.

Under the facts of this case we believe that the prior judgment as to Ames was satisfied when more than sufficient property ($9,415 in value) was actually taken into possession by the trustee appointed by the court, removed from the possession of Ames, sold, and the judgment credited with the proceeds. In Cornelius v. Burford, 28 Tex. 202, 91 Am.Dec. 309, is the following holding: "It has been repeatedly held, and may be considered well settled, that a levy upon sufficient personal property to satisfy the execution is a satisfaction of the debt, if taken from the possession of the defendant in execution. The creditor, after such a levy, must look to the officer making it for his money; for, so far as the debtor is concerned, it is paid, and he is discharged from further liability on account of it."

Except for the $64.26 item due by Hightower, administrator, as above shown, all devastavits and wastes and other items incident thereto chargeable against Mrs. Frona Ames, J. B. Ames (Hightower, administrator), American Indemnity Company, or J. E. Gilbert, either as principal or sureties, respectively, were due at the time of the trial of cause No. 15,750, and, as before stated, if they were not included therein they should have been, and therefore concluded by the judgment. They were items properly to be considered in that case and they doubtless would have been paid at that time had they been adjudicated since the value of the property actually taken from Ames was considerably more than sufficient to liquidate all established claims of the appellee.

For the above reasons, the instructed verdict should have been directed in behalf of Mrs. Ames, the Indemnity Company and L. A. Hightower, administrator, except as to the $64.26 item accruing after judgment in 15,750 and before the death of Ames. As to this item of $64.26 judgment is awarded appellee against said Hightower, administrator.

■ We now examine the questions presented by appellants Kinnaird and the surety on his bond, the United States Fidelity & Guaranty Company. By its answer to special issue No. 15, the jury found that by the exercise of ordinary care and diligence Kinnaird, as guardian, could have collected the entire judgment of $4250 awarded Doris Meckie Rice on her petition in intervention in cause No. 15,750. Based upon the jury's answer to special issue No. 6, the general issue of Mrs. Ames' mismanagement while guardian, the jury found in answer to special issues 18 and 19 that said Kinnaird could, by the exercise of ordinary care and diligence, have recovered an additional $4,250 of the loss to appellee's estate caused by Mrs. Ames' mismanagement thereof. The court, in his judgment in the instant case, denied the appellee recovery on the latter item. No issue is raised on the court's failure to enter judgment for appellee for this additional amount. Therefore, the error, if any, in submitting such general issue of mismanagement by Mrs. Ames would be harmless. Further, our conclusions as to res adjudicata effectively dispose of that point or supposed element of recovery.

By the first ten propositions appellants Kinnaird and United States Fidelity & Guaranty Company complain of the failure of the court to submit any issue of proximate cause complementary to the above issues. Art. 4168, R.S.1925, provides: "The guardian of the estate shall use due diligence to collect all claims or debts owing to the ward, and to recover possession of all property to which the ward has a title or claim; provided, there is a reasonable prospect of collecting such claims or debts, or of receiving such property; and if he neglects to use diligence, he and his sureties shall be liable for all damages occasioned by such neglect."

■ Except as hereinafter indicated, Kinnaird's pleadings and his testimony in the instant case established as a fact that he did not collect any of said $4,250 judgment, but that Mrs. Ames was permitted by him to take all the property bid in except $686, and a possible interest in real estate, presently to be considered. He

further alleges the "notorious insolvency" of Mrs. Ames and her sureties at all times during the period of his own adjudged liability. He admits his inability to recoup any of the loss from her. The trustee appointed by the court in cause No. 15,750 testified that for the property in his hands (against which Kinnaird, as guardian for the appellee, had a first lien to the extent of $4,250) he received a cash bid of more than $4,250. The said pleadings and testimony are conclusive upon the question of the guardian's breach of a statutory duty, proximately resulting in the loss of this $4,250, or the portion thereof hereinafter specified. Heyn v. Massachusetts Bonding Co., Tex. Civ.App., 110 S.W.2d 261.

█ Although the issue of proximate cause is generally a question of fact to be submitted to the jury, the evidence may be such as to make its determination a question of law for the court. St. L. S. W. Ry. Co. v. Missildine, Tex.Civ.App., 157 S.W. 245, error refused; Heyn v. Massachusetts Bonding & Ins. Co., Tex. Civ.App., 110 S.W.2d 261; Citizens' Nat. Bank v. Ratcliff, Tex.Civ.App., 238 S.W. 362, Id., Tex.Com.App., 253 S.W. 253; International-Great Northern Ry. Co. v. Hawthorne, 131 Tex. 622, 116 S.W.2d 1056. Under the evidence and the pleadings, proximate cause, if an element in the case, was established as a matter of law.

Analogous to the facts of the case last cited, it will be noted in the instant one that Kinnaird in his application to bid at said trustee's sale "anticipated" and stated that unless someone should bid $4,250 in cash, the property would be "dissipated" and the appellee "would lose her debt." Relative to that matter Kinnaird's attorneys were informed by the trustee that a cash bid for the property, much in excess of $4,250, would be available at the sale.

Obviously, the joint bid by Kinnaird, as guardian, with Mrs. Ames, for the property at the trustee's sale was an unauthorized act by Kinnaird. He held a judgment for the ward for the $4,250 with a first lien upon the property which the undisputed testimony showed to be worth about $10,000. Upon said application he obtained permission from the probate court to bid for said property to the amount of $4,250. Had he carried out such directions he would undoubtedly have collected that amount in cash. Instead, he en-

tered into an agreement with Mrs. Ames whereby he, as guardian, contributed $4,-250 of the ward's property, or the judgment (secured by the first lien) and Mrs. Ames contributed $4,250 (a part of her judgment of $10,377.02 against Ames) secured by a second lien on same property, and with this amount aggregating $8,500, the community property of Mr. and Mrs. J. B. Ames was bought in at the trustee's sale for Mrs. Ames and the appellee in equal undivided interests. That arrangement on an unequal basis passed title by an agreement with Kinnaird of only one-half of said property to the ward, and in addition, as pointed out, he permitted Mrs. Ames to take possession and dissipate or convert (with exception to be noted) said property insofar as the ward may have had any interest in the same. That in effect is the legal consequences of what occurred as a result of such transaction or non-performance of the guardian's statutory duty. The joint bid under these circumstances being wholly unauthorized, we think the appellee had a legal right to repudiate the same.

The United States Fidelity & Guaranty Company further objects to the judgment against it and complains that no proximate cause is shown and that it is not bound by the pleadings of Kinnaird contained in a cross-action filed by him against other parties, and not adopted by said company. As to it no such pleadings are appropriated to support our conclusions. The element of proximate cause with respect to the liability of Kinnaird and his surety was properly and definitely established. What has been said above, in effect, disposes of this question. Heyn v. Massachusetts Bonding & Ins. Co., Tex. Civ.App., 110 S.W.2d 261.

The appellants' propositions 11 to 13, both inclusive, raise the question (with respect to the jury's findings in response to issues 15, 18 and 19) first, that there was no evidence that the plaintiff had suffered damages from Kinnaird's negligence, if any, in failing to collect the item therein involved, and, second, that said issues were merely evidentiary. The discussion in the preceding paragraphs answers these questions. The propositions are believed to be without merit and are overruled.

█ Propositions 14 and 15 complain of issues 15 and 18 on the ground that, as worded, they assumed Kinnaird's fail-

ure to exercise ordinary care and diligence. As stated, Kinnaird's pleadings and the testimony are believed to establish such facts without dispute. That being so, if the form of the issues submitted was not correct, the error would be harmless. Further, we do not believe that the record supports the contention that the court made any such assumption of fact.

By proposition 16 appellants complain of the court's submission of special issue 8, the general issue of Kinnaird's mismanagement, because appellee pleaded specific acts of negligence and the appellants assert that for such reason said finding of the jury should have been set aside on that issue, as well as that in response to special issue 9. From the examination of the record we do not believe the point was made that the plaintiff should be restricted as stated. Further, it is true, that there is a finding (issue 9) that part of plaintiff's estate (to the amount of $1,509) was lost as the result of Kinnaird's general mismanagement of said estate. However, no recovery was allowed by the trial court on the issue and it is believed that no harm could have resulted to appellants by virtue of the submission of the issue. The trial court recited in his judgment that the answer to the issue (9) was "immaterial and surplusage". The only recovery allowed as against Kinnaird was based upon one of the specific allegations of negligence, namely, his failure to collect the $4,250.

Propositions 21, 22 and 23 relating to the question of the appellee having elected to claim the judgment for $4,250, etc., are believed to be without merit and are overruled.

When the trustee, Flewellen, sold the Ames property he transferred to the purchasers, Mrs. Frona Ames and Doris Meekie Rice (appellee), along with the personal property, three tracts of real estate. In answer to issues 7, 8 and 9 the jury found the value of these respective tracts to be at the date of sale (April 5, 1934) $350, $1,695, and $10—aggregating $2,055.

By propositions 17 and 18 these appellants contend the recovery against defendant should have been reduced by the amount of this $2,055, and by propositions 18 and 20 they insist, in any event, such recovery should have been reduced by one-half that amount, since the trustee deeded the real estate to Mrs. Ames and appellee (the daughter) in undivided equal interests. It is undisputed that said real estate was so deeded, and that this real estate stood in their names at the time of the trial of the instant suit. No tender of the ward's interest in this real estate was made by her in her pleadings or otherwise. After this real estate was conveyed to them, the District Court approved the same on the basis that the purchasers had jointly paid $8,500 for the property and that the appellee's part was "* * * to be paid by crediting * * * the sum of $4250 in favor of Doris Meekie Rice, a minor, in satisfaction of her judgment lien against the community estate of J. B. Ames and Mrs. Frona Ames adjudged and described in the judgment in this cause" (15,750).

After a careful consideration of this record we are constrained to hold that there is merit in propositions 18 and 20 now under consideration. We believe the appellee is in the attitude of retaining title to a one-half interest in this real estate and recovering, at the same time, damages from Kinnaird (and incidentally his surety) because of Kinnaird's alleged negligence and failure to secure possession of the property at the time of the trustee's sale for the benefit of his ward. To hold otherwise would amount to a holding that a ward could keep the fruits of an unauthorized transaction on the part of a guardian and, at the same time, make demand on the guardian for the money used in acquiring such benefit. That, of course, is not the law on such state of facts. Jones v. Parker, 67 Tex. 76, 3 S.W. 222; Griffith's Ex'r v. Bybce, 69 S.W. 767, 24 Ky.Law Rep. 666; 28 C.J. p. 1158, sec. 274. The trial court erred in not reducing the judgment by one-half the value of said real estate, namely, $1,027.50.

By propositions 24 to 29 these appellants complain of the action of the trial court in allowing interest at 10 per cent. per annum on the $4,250 item of judgment from April 5, 1934, the date of the transfer of the property by L. H. Flewellen, trustee, to Mrs. Ames and appellee. It is believed that any allowance of interest must be based, if at all, upon Art. 4189, R.S.1925, which reads: "If the guardian neglects to invest or loan surplus money on hand at interest when he can do so by the use of reasonable diligence, he shall be liable for the principal and also for the highest legal rate of interest upon such principal for the time he so neglects to invest or loan the same."

Here the gist of appellee's contention is that Kinnaird failed to collect the $4,250, and not that he failed to loan the money or invest it when he could have done so. The statute would seem to have no application to the situation here involved.

Further, it would be necessary that the pleading and proof be made tending to show that Kinnaird could have invested the money by the use of reasonable diligence; the record is completely silent on both. Also, there is neither allegation nor proof that Kinnaird converted any funds to his own use. It must be concluded, therefore, that it was error for the trial court to assess 10 per cent. interest on the $4,250 item had it been recoverable without any deductions.

The appellee cross-assigns error to the action of the trial court in making certain deductions by way of fees, commissions and expenses, etc.

We find that Kinnaird was improperly given credit for various items of expenditures, but the following should be allowed as proper items of credit: (1) An item of $116 representing (a) bond premiums ($56) and (b) money paid to the appellee ($60), (2) a commission in an amount of $2.80 on said $56, and (3) payment to W. Ross Hodges, guardian, of $353.25, balance of principal (or of said $686) on hand when Kinnaird was displaced as guardian. These authorized credits aggregate $472.05 and should be allowed Kinnaird.

One-half of the real estate ($1,027.50) plus allowable deductions ($472.05) aggregate $1,499.55. This amount subtracted from the item of $4,250 leaves $2,750.45, for which the plaintiff is entitled to a judgment as against Kinnaird and his surety.

As to the appellants Frona Ames and her sureties the judgment of the trial court is reversed and here rendered in their favor in accordance with the first division of this opinion, except as to the item of $64.26, which has been adjudicated in favor of the appellee against said Hightower, administrator of the estate of J. B. Ames, deceased.

The judgment of the trial court in favor of the appellee and against D. L. Kinnaird, guardian, and his surety, the United States Fidelity & Guaranty Company, will be reformed in the respects pointed out, and as reformed affirmed,

granting appellee's recovery of and from the principal, D. L. Kinnaird, and said surety, the sum of $2,750.45, and for whatever sum, if any, the said surety United States Fidelity & Guaranty Company may pay on said judgment, it shall have a judgment over against said D. L. Kinnaird for that amount.

The conclusions herein expressed, in effect, overrule many assignments of error, and render others immaterial. For that reason they are not discussed.

In accordance with this opinion, the judgment of the trial court is reversed and rendered in favor of certain appellants, and is reformed and affirmed as to others in the respects pointed out. In other respects, the judgment of the trial court is undisturbed. It is so ordered.