## FORT WORTH & DENVER CITY RY. CO. v. BURTON et al.

### No. 5374.

Court of Civil Appeals of Texas. Amarillo.

Jan. 19, 1942.

Rehearing Denied Feb. 9, 1942.

Williams & Bell and Mahan & Brough-ton, all of Childress, and Thompson & Bar-wise and Luther Hudson, all of Fort Worth, for appellant.

J. O. Fitzjarrald, of Memphis, Henry S. Bishop, of Amarillo, R. Stansell Clement, of Lamesa, Stephens & Harman, of Colum-bus, Kan., and C. O. McMillan, of Stephen-ville, for appellees.

FOLLEY, Justice.

This is a damage suit brought against the appellant, Fort Worth and Denver City Railway Company, by the appellees, Leota Myrtle Burton, administratrix of the es-tate of her deceased husband, Chester E. Burton, and Emma Jane Griggs, adminis-tratrix of the estate of her deceased hus-band, Martin Van Buren Griggs. The suit was originally two suits filed separate-ly by the appellees but the trial court con-solidated them upon the motion of the ap-pellant without objection by the appellees. Thereafter in a single petition the appel-lees joined together their claims against the appellant and the latter responded by a single answer.

The suit was to recover damages under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., for the death of Burton and Griggs who were fireman and engineer respectively in the employment of the appellant. They were killed about 3:50 A. M. June 16, 1938, when the locomo-tive of the appellant which they were op-erating plunged through a bridge across the Salt Fork of the Red River between Well-ington and Shamrock on appellant's branch line extending from Childress to Pampa. This river flows eastward.

The trial resulted in a judgment based upon a jury's verdict in the sum of $14,984.-84 for Mrs. Burton and a like amount for Mrs. Griggs.

The appellant's main line from Fort Worth runs through Childress and Chil-dress County and then northwest through Hedley, Lelia Lake and Clarendon in Don-ley County to Amarillo. Appellant's branch line involved herein extends north from Childress through Wellington in Col-lingsworth County to Shamrock in Wheel-er County and from Shamrock northwest to Pampa in Gray County. The train in-volved was freight No. 92 which left Childress going north about 1:20 A. M., ar-riving in Wellington about 3:00 A. M. and to the bridge, which was about ten miles north of Wellington, about 3:50 A. M. This bridge was about 920 feet long. It was about 56 feet from the top of the ties to the bed of the river. The bridge bed rested on pile bents spaced 20 feet apart. There were about 45 of these bents be-neath the bridge bed. They were braced and cross-braced by heavy timbers. About 120 feet of the bridge went out carrying the engine with it into the river which was at flood stage. The section which col-lapsed was approximately 150 feet from the south bank of the river. It was also shown that some time earlier the same night the Quail-Dozier highway bridge about six and one-half miles upstream westward was washed out in the same flood. This bridge, which the parties herein denote as a wagon bridge, was 1,300 feet long from which a section 456 feet long washed out, went down stream and struck the railway bridge. It was appellant's contention that the section from the Quail-Dozier bridge struck the railroad bridge while the engine was on the bridge, shearing off the piling and causing the collapse of the bridge be-neath the engine.

At Wellington Train No. 92 met appel-lant's southbound Train No. 91, also a freight train, which had just come from Pampa through Shamrock and over the Salt Fork bridge. The crew of the south-bound train handed the brakeman of Train 92 a note which among other things said: "High water in Salt Fork". This note was read by this brakeman and by Burton and Griggs. The conductor who was on the caboose did not get a copy of this message. The engine of Train 92 thereupon pro-ceeded north out of Wellington at about 20 miles per hour to the bridge. Upon reaching the bridge the engineer Griggs reduced the speed to 4 or 5 miles per hour with the headlights shining across the bridge. At such time two brakemen were in the cab of the engine with Burton and Griggs. After going about 50 feet onto the bridge, McKenzie, one of the brake-men, observed a sudden kink in the rail ahead, shouted an alarm to the engineer and ran back over the tender of the engine to the first box car behind the tender. Im-mediately thereafter the engine with the attached tender crashed through the bridge into the water taking Burton and Griggs with it and also the other brakeman who, unlike Burton and Griggs, miraculously escaped death and lived to testify in this trial. The breaking of the train automatic-ally set the air brakes of the remainder

of the train so that only the engine and tender fell through the bridge.

On the night in question there was no substantial rainfall in the Salt Fork watershed anywhere close to the bridge. The only rainfall of any consequence was 30 or 40 miles west at Hedley, Lelia Lake and Clarendon in Donley County which is immediately west of Collingsworth County wherein the bridge was located. According to the varying estimates the rainfall at these places ranged from 8 to 20 inches, all of which fell in three or four hours during the evening of the same night of the injury. A section foreman of the appellant on the branch line, having seen the clouds in the west, left his station south of Wellington immediately before midnight and patrolled the appellant's track north through Wellington and over the bridge in question until he met another patrolman about 6 miles south of Shamrock. When he passed over the bridge as he went north the river had very little water in it. After meeting the other patrolman he returned south over the same track to the bridge and passed over such bridge a short time ahead of the southbound train above mentioned. When he reached the Salt Fork on his return trip he stopped his motor car and inspected the bridge, shining his flashlight down the pilings, but found nothing which seemed unusual or dangerous. At such time there was only 2 or 3 feet more water in the river than when he had gone north a short while before. At his last inspection his testimony was that there was hardly enough water to cover the wide sand bed of the river. He then returned to Wellington ahead of the southbound train where he found Train 92 and told its crew he was patrolling ahead of Train 91 into Childress.

Admittedly the appellant's dispatcher at Childress and its superintendent, who happened to be in Childress on the night of the injury, knew before Train 92 left Childress that there was a heavy rain and a washout on appellant's main line around Lelia Lake in Donley County. However, the testimony further showed there was nothing unusual about high water and washouts in the Hedley-Lelia Lake territory, and that although such washouts had occurred one or two times a year since the branch line was built in 1931 and 1932 such washouts or floods had never caused any trouble at the Salt Fork bridge.

The findings of the jury may be classed generally as convicting the appellant of negligence in its failure to notify the two deceased trainmen of the extent of the watershed of the Salt Fork of the Red River,. as to the extent of the rainfall, and in the construction of the railroad bridge, each of which acts of negligence was found to have been a proximate cause of the injuries. Further findings acquitted the two deceased trainmen of contributory negligence or of any culpability under the theory of assumed risk.

The trial court submitted Issue No. 7 to the jury in the following language: "Do you find from a preponderance of the evidence that the construction of the railroad bridge in question was not sufficient to take care of the water and floating material which might reasonably be expected to flow down said Salt Fork of Red River and under said bridge?" This issue was answered in the affirmative. Attendant issues Nos. 8 and 9 were submitted inquiring respectively if such omission constituted negligence and a proximate cause of the death of Burton and Griggs. These issues were also answered affirmatively. The appellant objected to the submission of these issues because the evidence was not sufficient to justify their submission and for the further reason that special issue No. 7 was not confined to the defects or negligence with regard to the railroad bridge specified in appellees' pleadings. The appellant's first two assignments are based upon the court's action in overruling these objections.

Both of these assignments must be sustained. The burden of appellees' pleadings in this respect was that the appellant was negligent in using pile bents instead of rock or concrete piers, in spacing such bents only 20 feet apart instead of 200 feet apart and in extending the embankment on the north side into the bed of the stream and thereby increasing the velocity of the water. No such allegations were submitted to the jury but on the contrary the general question above outlined was submitted. We think such a deviation from the specific allegations of the petition constituted error in the face of appellant's objections to the charge. Gulf States Utilities Co. v. Dillon et al., Tex.Civ.App., 112 S.W.2d 752 and authorities cited; S. Blickman, Inc. v. Chilton, Tex.Civ.App., 114 S.W.2d 646. Moreover, the record is void of any testimony showing negligence in the construction of

the bridge. The pile bents were each made up of seven pilings driven into the bed of the river and bolted together with braces and cross-braces. This bridge was built just prior to the time the road was put in operation in 1932. There was neither pleading nor evidence that the bridge was rotten, decayed or made out of bad material, nor was there any evidence that the bracing was loose, the bolts rusted or the piling not properly driven. The complaint of the appellees was apparently directed at the type of bridge used at this crossing, since the appellees' petition charged that concrete or rock piers should have been used and spaced 200 feet apart; yet, there was no evidence from any witness that concrete or rock piers were either proper or feasible at this point or that such a bridge would have been more likely to sustain the battering from a wagon bridge torn loose by a flood upstream. The appellees utterly failed to show that any other type of construction was feasible or that any other type would have prevented the injury. The appellant was not bound under the law to erect any particular type or character of bridge, its sole duty being to exercise ordinary care to construct and maintain a bridge which was reasonably safe for the use of its trains and employees. Union Pacific Railway Co. v. O'Brien, 161 U.S. 451, 457, 16 S.Ct. 618, 40 L.Ed. 766. The testimony of the appellees goes no further than to show that the bridge collapsed, which was insufficient to warrant a jury to infer that it was not properly constructed or that an ordinarily prudent man would not have so constructed it. Johns v. Pennsylvania R. Co., 226 Pa. 319, 75 A. 408, 28 L.R.A.,N.S., 591; Toledo, St. L. & W. R. Co. v. Allen, 276 U.S. 165, 48 S.Ct. 215, 72 L.Ed. 513; Delaware, L. & W. R. Co. v. Koske, 279 U.S. 7, 49 S.Ct. 202, 73 L.Ed. 578.

Under its third proposition the appellant complains of the refusal of the court to permit its witness, A. B. Smith, civil engineer and surveyor, to express his opinion with reference to whether the railroad bridge was struck and sheared off by the Quail-Dozier wagon bridge, whether the railroad bridge would have gone out from the action of the water alone and as to what caused the railroad bridge to go out.

Mr. Smith was a civil engineer and surveyor who had lived in the Panhandle since 1907. During such time he had been familiar with the Salt Fork of the Red River and had seen a number of bridges washed out in various counties in the territory. His qualifications as a civil engineer and as a surveyor were admitted. At the request of the appellant he went out to the river shortly after the injury and made measurements both at the railroad bridge and at the wagon bridge. He also went down stream and inspected the wreckage of both bridges. At a later time he made a complete survey of all the watershed of the Salt Fork of the Red River above the railroad bridge. He testified that he identified the piling from each of the bridges in the wreckage downstream. This was apparently possible because the bents from the wagon bridge were smaller than those of the railroad bridge. According to his testimony in each instance the end of the piling from the wagon bridge was like a maul, that is, it was evident that it had hit something with terrific force. The piling he found from the railroad bridge was sheared off. He also stated there was no indication at the railroad bridge or elsewhere that such bridge had been dug out from underneath the piling by the water. The court thereupon refused to allow the jury to hear his further testimony to the effect that the railroad bridge was, in his opinion, struck and sheared off by the wagon bridge and that the railroad bridge would not have gone out if it had not been struck by the wagon bridge.

We think the court erred in not admitting this testimony before the jury. It has been held upon excellent reasoning and authority in this state that similar opinion testimony even from a non-expert witness is admissible where such witness has made a detailed personal investigation on the ground and where it is impossible for him to completely get into the jury's mind everything he saw and all the conditions that actually existed. Galveston, H. & S. A. Ry. Co. v. Daniels et al., 9 Tex.Civ. App. 253, 28 S.W. 548. In 19 Tex.Jur. 61, par. 39, it is said:

"Many matters relating to the construction or maintenance of a railroad have been considered to be proper subjects for the opinions of experts. Thus an expert may state whether a railroad was built in the usual and proper manner; whether it would have been feasible to install a grade crossing at a given point; the cause of a derailment; whether obstructions placed on a

track were calculated to wreck a train running at ordinary speed; whether the tracks should have been placed farther apart; the proper distance between switch and rail or between rail ends; and the relative safety of blocked and unblocked switches."

Also, in 19 Tex.Jur. 432, par. 280, it is further stated: "A competent observer may be permitted to state in the form of an inference the cause of a given natural occurrence or the effect produced by a particular phenomenon, in cases where the facts cannot fully be placed before the jury and where the witness is possessed of sufficient knowledge to make his inference of some value. Under these conditions a witness may well infer that a certain bridge, embankment or obstruction caused an overflow; that the inferior condition of railroad ties and the spreading of the track caused the derailment of a train; or that a hole in a hat was made by a bullet."

Under these rules we therefore sustain this assignment. Missouri Pacific Ry. Co. v. Jarrard, 65 Tex. 560; International & G. N. Ry. Co. v. Klaus, 64 Tex. 293; Weber v. C., R. I. & P. Ry. Co., 175 Iowa 358, 151 N.W. 852, L.R.A.1918A, 626; Fort Worth & Denver C. R. Co. v. Thompson, 75 Tex. 501, 12 S.W. 742; Gulf, C. & S. F. Ry. Co. v. John et al., 9 Tex.Civ.App. 342, 29 S.W. 558, writ refused; Gulf, C. & S. F. Ry. Co. v. Locker, 78 Tex. 279, 14 S.W. 611; Gulf, C. & S. F. Ry. Co. v. Richards, 83 Tex. 203, 18 S.W. 611.

 In response to one issue submitted the jury found that the collapse of the railroad bridge was the sole proximate cause of the death of Burton and Griggs. The appellant asserts such finding was in irreconcilable conflict with all of the findings of the jury on proximate cause based upon appellant's negligence, thus nullifying the same and resulting in a judgment unsupported by a verdict. The appellant has properly preserved this point as vitiating the judgment. Although a single act or omission may constitute both the sole and a proximate cause of an event, it is equally true that there can be but one sole proximate cause of an injury. The very term "sole proximate cause" impels this conclusion. The finding that the collapse of the bridge was the sole proximate cause of the injury might be reconciled with the finding of proximate cause in connection with the alleged improper construction of the bridge since its purported faulty construction and its collapse might have been coincident in nature in producing the injury, but such is not true with reference to the findings of proximate cause as to the failure to notify the deceased trainmen of the extent of the watershed and of the rainfall. Since these findings may not be reconciled with the finding on sole proximate cause, and particularly in view of the above holding as to the error in the submission of the issue as to the improper construction of the bridge, we are compelled to sustain this assignment. Southland Greyhound Lines, Inc. v. Cotten, 126 Tex. 596, 91 S.W.2d 326; Marshall v. Hall, Tex.Civ. App., 151 S.W.2d 919; Fruge v. James et al., Tex.Civ.App., 115 S.W.2d 1175; Duff v. Roeser & Pendleton, Inc., et al., Tex. Civ.App., 96 S.W.2d 682.

 We are also of the opinion the court erred in overruling appellant's objections to the issues on damages and the instructions given in connecton therewith wherein the appellant urged that in addition to the instructions given, which we need not repeat, the jury should have been further instructed in determining the present value of future contributions reasonably expected from each of the deceased that they must discount the recovery at the highest rate of interest at which money can be safely and securely invested in the locality involved. Since this case comes under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. this matter becomes a federal question. The Supreme Court of the United States has held that in awarding damages under this Act a jury must determine the present value of the pecuniary loss calculated as bearing interest at the highest net rate that can be had on money safely invested. Gulf, C. & S. F. Ry. Co. v. Moser, 275 U.S. 133, 48 S.Ct. 49, 72 L.Ed. 200. This rule has also been impliedly, if not expressly, approved by the Supreme Court of Texas. Texas & P. Ry. Co. v. Perkins, Tex.Com.App., 48 S. W.2d 249.

 By numerous propositions the appellant alleges error because various other issues submitted to the jury were unsupported by the pleadings or were not in conformity to the specific allegations made. These assignments are predicated primarily upon the fact that some of the issues were based upon general allegations when such general allegations were followed by specific allegations of negligence. To discuss these assignments in full would prolong this opinion beyond reasonable bounds. Suf-

fice it to say that there is merit in some of these assignments which we dispose of by saying that it is settled beyond controversy that the special issues and proof must be supported by the pleadings, and where both general and specific allegations are made as to acts of negligence the pleader is confined to his specific allegations both as to the proof and the issues submitted. International-Great Northern R. Co. v. Hawthorne, 131 Tex. 622, 116 S.W.2d 1056; San Antonio & A. P. Ry. Co. v. De Ham, 93 Tex. 74, 53 S.W. 375; Missouri Pac. Ry. Co. v. Hennessey, 75 Tex. 155, 12 S.W. 608; Gulf States Utilities Co. v. Mitchell, Tex.Civ.App., 104 S.W.2d 652; Kansas City, M. & O. Ry. Co. of Texas et al. v. James et al., Tex.Civ.App., 190 S.W. 1136. The trial court's failure to observe this rule therefore constituted error.

In view of another trial, and in answer to numerous other assignments of the appellant, we deem it sufficient to state in connection with the definitions in the charge that only such terms as are elsewhere used in the court's charge should be defined. Also, rather than giving a general instruction on the burden of proof the better practice, and that which is most likely to avoid error, is for each issue to be so framed that, within itself, it places the burden of proof upon the proper party.

The other matters urged by the appellant will probably not occur upon another trial. For the errors above discussed the judgment must be reversed and the cause remanded.

Reversed and remanded.