I. & G. N. R'y Co. v. Eliza A. Copeland et al.

(Case No. 1496.)

1. NEGLIGENCE.— A railway train should stop a reasonable length of time at depots to allow all passengers to enter the cars, and a reasonable time thereafter for them to be seated, after which the company will not be rendered liable on account of an injury sustained by one who, having an opportunity to be seated, fails to sit down, and is thrown down by the starting of the train after the usual signal to start was sounded.

2. NEGLIGENCE.— The liability of a railway company for negligence will, to a degree, be limited by its capacity and fitness to transport passengers known to a passenger when he elects to be transported on it. Hence a short line road, doing a small business and running only mixed trains, is not required to apply all the delicate checks and guards that are in use. Citing Wharton's Neg., sec. 140.

APPEAL from Wood. Tried below before the Hon. John C. Robertson.

Suit by appellee alleging that on the 6th day of April, 1881, the plaintiff, E. A. Copeland, being a woman fifty-four years of age, and of strong bodily health and vigor, applied, as a passenger for hire, for transportation over defendant's railroad at a water tank and section house about two miles north from Lindale, in Smith county, Texas, the water tank and section house being a place where defendant usually received passengers on its trains. That on that day the conductor, being the agent of defendant in charge of the train, received the plaintiff upon the cars of defendant at that point as a passenger for transportation to Tyler, in Smith county, Texas; that after she had so entered the cars, and before she had had time to secure a seat, she, using all care and prudence on her part to secure a seat, the defendant, by its agent in charge of the train of cars, negligently, wrongfully and carelessly caused the same to be put in motion with a violent jerk, by which she was thrown violently upon the arm of a car seat and thence to the floor of the car, fracturing two or three of her ribs near the spinal column, and otherwise bruising and injuring her body, causing great bodily pain, anguish, mental suffering and permanent injuries, producing partial paralysis on her right side, permanently impairing the use of her limbs, injuring her right eye so as to impair her sight for life; all of which rendering her a cripple for life and depriving her of her usefulness to herself and family. That the train on which plaintiff was injured was a mixed train, composed of eight freight cars heavily loaded, a caboose and passenger coach; that the train was on an up grade at the time of the injury, and that the load was out of proportion and too heavy for the engine which was hauling the train. That starting such a train under such circumstances is always attended with great danger, all of which facts were known to agents of defendant in charge of the train, but no notice of same was given to plaintiff before the train started, and no sufficient time given plaintiff to secure a seat before starting the train, which acts and omissions upon the part of defendant's agents constituted negligence upon the part of defendant, and were the proximate cause of plaintiff's said injuries. That before she was so injured she was able to and did do a great deal of work, attending to her household duties, working upon and supervising her husband's farm, and attending to the gin upon said farm; that since said injuries she has been confined to bed a great part of the time, has never been able to walk without crutches, has suffered intense pain, bodily and men-

tal, has been at great expense for medicine and medical attention, and has never since been able to perform any of said work and labor. Because of the injuries so inflicted as aforesaid, she sued for $30,000 damages. By its answer, defendant pleaded the general issue, and set up by special answer that if plaintiff E. A. Copeland was injured, it was by reason of her own negligence in not using any diligence in taking a seat. That she was assisted by the conductor of the train into the passenger coach, where half of the seats were vacant; that she passed several vacant ones without taking one; that the train stopped on that occasion for five or ten minutes, and the usual time, and a reasonable time for all passengers and freight to be taken on at said place; that defendant's train was on that occasion loaded and running at that place (the water tank and section house) in a southerly direction, and up grade; that the train was a mixed train, composed of eight or ten loaded freight cars and a passenger coach; that the jerk in starting the train on that occasion was not unusual in starting a like train at that place. Defendant filed exceptions to plaintiff's petition, on the ground, substantially, that the same was an amendment to a substituted petition, the order substituting which had been made at a time when the judge making the same was disqualified, which were by the court on same day overruled. On the 24th day of May, 1883, the cause was tried before a jury, resulting in a verdict and judgment for plaintiff for $8,000.

The charge of court and material facts are manifest from the opinion.

*Hart & Buchanan*, for appellant, filed an able and exhaustive brief on the questions involved.

*Giles & Kate* and *Robertson & Finley*, for appellees, cited on negligence: Pollard v. R. R. Co., 22 Wall., p. 341; Indianapolis & St. Louis R. R. Co. v. Harst, 3 Otto (Sup. Ct. U. S.), p. 291, and authorities there cited; Noble v. Cunningham, 74 Ill., 51; 14 Abbott's Pr. (N. S.), 213; Hutchinson on Carriers, p. 519, sec. 660, and authorities there cited; Wharton's Law of Negligence, sec. 640, and authorities there cited; Shearman & Redfield on Negligence, sec. 276; Nicholus v. Sixth Avenue R. R. Co., 38 N. Y., 131; Thompson on Carriers of Passengers, notes, p. 240, citing Dudley v. Smith, 1 Camp., 167.

West, Associate Justice.— The assignments of error are numerous. They have all been carefully examined. In making, however,

a disposition of this case, only such of them will be noticed as it may become necessary to allude to incidentally in order that the views we have taken of the case may be understood.

The charge of the court, though evidently prepared with great care, and quite full and fair in most of its statements to the jury of the issues raised between the parties by their pleadings, and in the main a very clear and intelligible announcement of the principles of law applicable in general to most of the issues in the case, was nevertheless, in some material respects, calculated to mislead, and, no doubt, in some matters of importance, did unduly influence the jury to the prejudice of appellant.

We are of the opinion that the charge, in some parts of it, gave undue prominence to certain facts recounted in it, and also stated in terms somewhat stronger than the facts and circumstances in evidence rendered necessary the law governing the case in several particulars.

It especially did so in informing the jury, in substance, that it was the duty of the conductor, under the facts of this case, to see that the passengers were seated before starting, and that a failure so to do was negligence.

In this connection the court used, in substance, the following language: If the place where she (the appellee, Mrs. Copeland) was received was one of unusual danger in starting, it was the duty of the servants of the appellant to warn her of such danger, and, if necessary to avoid the danger, said servants or employees should, before starting, see the passengers *seated*.

In another part of the charge, and in the same connection, after calling the attention of the jury, with perhaps unnecessary minuteness of detail, to certain facts supposed to have been developed in the case by the evidence, the court instructed them to inquire on this point, if the injury suffered by the appellee could have been avoided by *seating* the passengers, etc.

We think this, under the facts and circumstances of this particular case, put the matter to the jury in rather stronger terms than was proper. It is not, in such cases, the duty of the conductor or employees of appellant to see that all the passengers are in their seats before starting the train. The train should stop a reasonable length of time to allow all the passengers to enter the cars, and if, after the passengers have all entered the cars, a reasonable time has elapsed to permit them to secure seats, the carrier may start.

In the present case, the weight of the evidence is that the train stopped from three to five minutes. That after the appellee was

by the conductor in person escorted into the passenger car, he then warned her to be careful, no doubt explaining sufficiently, to a person so intelligent as the appellee is shown by the record to be, why such caution was necessary, and after this caution notified her to secure a seat.

After all this, the train still standing, the conductor left her inside of the passenger car, and descended its steps to the ground, and with the assistance of a passenger then assisted an old, feeble and decrepit man, a passenger, to a seat in the same passenger car, and then again leaving the car, once more descended to the ground, and then gave the usual signal to the engineer to start the train. The engineer testified that after this signal was given he caused the engine bell to ring, before starting the train.

There is evidence going to show that the appellee (Mrs. C.) was an active, able-bodied person; that she was the first of the three passengers there in waiting for the train to board it, and that both of the other passengers who entered the train after she did, one of them being old and feeble, obtained seats.

As has been said, the conductor testified that he had warned and cautioned her, and advised her to get a seat, and after this left the car to superintend the entrance of other passengers into the same car. Surely this interval gave the appellee ample time to select her seat and take possession of it.

The testimony shows that all the other passengers without exception were seated; the appellee alone of them all was standing when the train started.

The evidence discloses that the stoppage at this point was quite as long as usual, and that before the train started the usual signal indicating that event was given by the engineer's bell.

Under all the facts, as disclosed in this particular case, we are of the opinion that a charge which in effect and substance made it the duty of the conductor to make sure that all the passengers were seated before starting the train, was misleading in its character and calculated to prejudice to some extent with the jury the rights of the appellant.

It was enough that the conductor in person saw all his passengers safely inside the cars provided for them, and cautioned them, as was done in this case, and directed them to procure seats, many of which were unoccupied, and then, after all this, waited long enough for this to be done, and then, before starting, caused the usual signal to be given by the engineer.

We think the court also presented, in this connection, the issue rather too strongly against the appellant, under the special facts in this case, when, in another part of the charge, it stated that the jury must determine from the proof whether slacking back the train or starting with a jerk was dangerous to the passengers, and if it was, was it necessary to do that for the running of the train, or could the appellant have reasonably reduced the load, or *increased the engine power, and thus avoided the danger.*

The facts show that the particular line of railroad in question was at the time of the receipt of the alleged injury a short branch road; that the trains ran over it for only forty-four miles, and traveled slowly, making but one round trip a day, and were quite sufficient at that time to do all the business of that part of the road; that no other than these mixed trains like the one in question were ever used over that part of the road at that time, and that this mixed train had been so running with the same or a similar engine ever since this branch road had been opened for business, and that the appellee, who was proved to be a very intelligent person, had more than once been a passenger over this same line of road. Under these circumstances, we think the charge above referred to was to some extent calculated to mislead the jury as to the duty of the appellant in the premises.

Treating of the subject of the use of certain engines and machinery on short branch roads like the one under consideration, with comparatively a small amount of business, Mr. Wharton says: "If I employ a carrier of small means and machinery, knowing what his capacity is, I must take him as I find him. . . . A railroad doing a small business in a sparsely populated territory, and running only a few trains, is not required to apply all the delicate checks and guards that are in use. . . . Diligence in all these cases is not the perfection of the ideal road; it is the practical adequacy of the actual road for the particular duty it undertakes." Whart. on Neg., sec. 140.

Under the circumstances, we think the main charge of the court as given to the jury was not, in several respects, applicable to the facts of the case, as disclosed by the evidence of both parties.

For these reasons we are of the opinion that the judgment should be reversed. It is therefore unnecessary at present to discuss the question as to whether or not the large verdict rendered in this case was justified by the proof. Under a different charge a different result might have been reached.

Nor is it necessary to treat at length of the main question that has been discussed, as to the disqualification of the presiding judge. The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered November 13, 1883.]