QUANAH, A. & P. RY. CO. v. JOHNSON.

(Court of Civil Appeals of Texas. Amarillo. May 15, 1913. On Motion for Rehearing, June 14, 1913.)

1. TRIAL (§ 192*)—INJURIES TO PASSENGERS —TRAINS—NEGLIGENT OPERATION.

In an action for injuries to a passenger by being thrown down in the aisle of a passenger coach by an extraordinary and unusual bump as the engine was coupled to the car in which plaintiff was, defendant having made no attempt to show that the bump was not extraordinary and unusually severe, the court did not err in assuming that the sudden movement of the train constituted negligence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 432–434; Dec. Dig. § 192.*]

2. DAMAGES (§ 169*)—INJURY TO PASSENGER— EVIDENCE—CHARACTER.

Where, in an action for injuries, defendant, by evidence of its own witnesses and by cross-examination of plaintiff, raised the issue that plaintiff was malingering, evidence that plaintiff's general reputation in the community in which he lived was good was properly received, though defendant did not otherwise impeach plaintiff or put his character in issue.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 495; Dec. Dig. § 169.*]

3. APPEAL AND ERROR (§ 1067*)—REVIEW—IN- STRUCTIONS—PREJUDICE.

Where, in an action for injuries, the petition alleged $150 as plaintiff's damage sustained by being compelled to purchase medicine and to pay for physicians' services, and the court had limited the jury to that amount; and the evidence of the value of the services of one of plaintiff's physicians approximated closely $150, the fact that plaintiff had employed two physicians and- that the evidence showed the value of the services of only one of them did not render prejudicial to defendant a paragraph of the charge on the subject of plaintiff's right to recover for medicines and physicians' services in failing to limit the recovery to the services of the one physician; defendant not having requested a special charge limiting plaintiff to such recovery.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4229; Dec. Dig. § 1067.*]

4. TRIAL (§ 296*)—INSTRUCTIONS—DAMAGES— DOUBLE RECOVERY.

Where, in an action for injuries, a paragraph of the charge submitted specifically the measure and elements of damage recoverable, a subsequent paragraph charging that, if the jury found for plaintiff under the instructions previously given, they should allow him such damages as seemed to them to be right and proper under all the circumstances and evidence did not authorize the allowance of double damages.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 705–713, 715, 716, 718; Dec. Dig. § 296.*]

On Motion for Rehearing.

5. CARRIERS (§ 321*)—INJURIES TO PASSENGER —INSTRUCTIONS.

Where, in an action for injuries to a passenger, it appeared that he was thrown down in the aisle and injured by an unusual bump as the engine was coupled to the car in which he was standing, an instruction that the carrier in the management of its train was required to employ careful and skillful agents was not objectionable as without evidence to support it.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1247, 1326–1336, 1343; Dec. Dig. § 321.*]

Appeal from District Court, Cottle County; Jo A. P. Dickson, Judge.

Action by C. K. Johnson against the Quanah, Acme & Pacific Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Fires, Decker & Clarke, of Quanah, for appellant. Browne & Hawkins, of Paducah, for appellee.

HENDRICKS, J. We copy from appellant's brief that "this suit was instituted in the district court of Cottle county, Tex., by C. K. Johnson, as plaintiff, against the Quanah, Acme & Pacific Railway Company, as defendant, for the recovery of damages for personal injury, alleged to have been sustained by the said Johnson as a passenger on one of appellant's mixed passenger and freight trains on the 1st day of December, 1910; the said injuries alleged to have resulted from the fall appellant received as a sudden movement of such train."

[1] First. Appellant, by its first assignment of error, challenges the correctness of the second paragraph of the main charge of the trial court on the ground that the court in charging the jury assumed that the sudden movement of the train was negligence and that the charge as to this matter was upon

the weight of the evidence and was highly prejudicial to the defendant, without leaving to the jury that the question of the jarring and jolting of the train was negligence. We are inclined to think that the complaint of appellant of the charge of the court is correct to the extent that the court did assume under the circumstances in the record that such sudden movement of the train was negligence, and necessarily the correctness of such assumption upon the part of the trial court is to be resolved upon the sufficiency of the evidence addressed to the court as justification for such charge.

Upon our consideration of this record, we think that the statement of appellee in his brief, of the evidence relevant to this particular proposition, is correct and appropriate, which we set out in full: "C. K. Johnson, the plaintiff, testified that on the date of his injury he purchased a ticket from the defendant from Quanah, Tex., to Paducah, Tex. That there were two chair car passenger coaches on the train. That he went into the rear coach at Quanah, Tex. That it was a cold day; the weather being about freezing. There was no fire in the coach. That he noticed just after leaving Quanah that there was no fire in the coach where he was sitting. That it was about six miles from Quanah to Acme, Tex., the first stop made. That the train ran up to the depot at Acme and stopped. That the engine cut loose and he heard it move off up the track. The conductor then came to the door of the coach in which plaintiff was seated and said, 'You all come out of this coach; come into the front coach; that they were not going to have a fire in the back coach that day.' That the train was then standing still and all of the passengers got up and moved out into the front coach behind several other passengers. That when he got into the front coach he met a party and was endeavoring to pass said party in the aisle. That about this time something struck the front end of the train, anyhow the train gave us a severe jerk. That it threw the witness down and threw the other party down on top of the witness. That the stove was located a few feet inside the door of the front coach, and witness had about reached the stove when the engine or cars ran into the train. That it was either the engine or some loose cars that ran into the train. That it was a most severe jolt that he ever saw any train give. That it knocked the witness down on the floor, and he fell on his back and right arm. That some other person fell on top of him. That the fall almost knocked him senseless and that the arm he fell on was swelled to twice its normal size before he reached Paducah, Tex. Witness also testified that besides Tom Stine there were two ladies in the coach. That one of them was Mrs. Henry of Quanah, Tex. That Mrs. Henry said it was a good thing the old man didn't fall under the bottom or it would have killed him.

The old man fell on top of witness. Witness further testified that he had ridden this train a few times before this, and that he had ridden mixed trains before this one. That he rode on mixed trains up to Seymour, Tex.. numerous times, and that in his experience in riding on trains similar to the one he was on this jar was an extraordinary jar. That he had never been on this train before or since this time when there was such a jar on it. The witness Tom Stine by depositions testified that he was on the train with Johnson about January 1, 1911, and remembered the jerking of this train at Acme, Tex.; that when the jerk came it was so violent that while he was standing in the big coach just behind the lavatory it threw him up against it; that it was a very sudden jerk, and was caused by other cars being thrown into the train, or rather against the coach in which they were; that it was a very extraordinary jerk; and that he had been riding on mixed trains for the past 15 or 20 years. This was all the testimony introduced as to whether the jar was unusual or extraordinary. The conductor nor any of the crew on the train were called to testify either as to the jar being an ordinary one or to deny that Johnson was moving into the coach under instructions and at the invitation of the conductor."

The appellee, for the purpose of sustaining its position, relies principally upon the case of International & Great Northern Railway Co. v. Copeland, 60 Tex. 325, decided by the Supreme Court, whose opinion in the cause indicates that the judgment of the trial court was reversed upon two grounds. In that case the appellee alleged that the train on which she was injured was a mixed train, composed of eight freight cars, heavily loaded, a caboose, and a passenger coach, and that at the station where the sudden jerk occurred causing the injury the train was on an upgrade, and that the load was out of proportion and too heavy for the engine which was hauling said train, to which the defendant railway company answered that the train stopped at the station the usual length of time, also alleging that the same was a mixed train, composed of eight or ten loaded freight cars and a passenger coach, and that the jerk on this particular occasion on an upgrade was not unusual in starting the same at that place, and further that if the plaintiff was injured it was by reason of her own negligence in not using diligence in taking her seat after she entered the train. The trial court in this cause committed a palpable error, misleading to the jury as to the contributory negligence of plaintiff in not exercising diligence in taking her seat in the coach, in which there were numerous vacant seats, two other passengers entering subsequently and having been seated, the conductor testifying that when he assisted Mrs. Copeland upon the train he cautioned her to be seated, and after

stopping the usual time signaled the engineer to go ahead, and the evidence indicating a sufficient time for her to become seated; the trial court, under this phase of the evidence, improperly charged the jury: "If necessary to avoid danger, said servants or employés should, before starting, see the passengers seated." We are reviewing the principal point upon which this cause was reversed in order to show more clearly the history of the case. It seems, however, that in this cause, and this part of the opinion appellant is relying on, that the trial court "stated that the jury must determine from the proof whether slacking back the train or starting with a jerk was dangerous to the passengers, and, if it were dangerous, was it necessary to do that for. the running of the train? Or could the appellant have reasonably reduced the load *or increased the engine power and thus avoided the danger?*" The Supreme Court criticises this charge, stating that this was a short branch road, the trains running over it for only 44 miles, traveling slowly and making but one round trip a day and only using a mixed train for that purpose, and which had been running with the same or similar engine since the road opened for business, and that appellee, who was a very intelligent person, had more than once been a passenger over this same line of road, and, quoting Mr. Wharton, said that: "If I employ a carrier of small means and machinery, knowing what his capacity is,· I must take him as I find him. A railroad * * * in a sparsely populated territory and running only a few trains is not required to apply all the delicate checks and guards that are in use. * * * Diligence in all these cases is not the perfection of the ideal road; it is the practical adequacy of the actual road for the particular duty it undertakes"—and we have this significant expression of the court that: "Under the circumstances, we think the main charge of the court, as given to the jury, was not in several respects applicable to the facts of the case, *as disclosed by the evidence of both parties.*" This latter emphasis is ours. The testimony is not set out as to the immediate circumstances of the starting of this train (in the Copeland Case) and does not indicate whether it was a usual or an unusual jerk. It is to be noted that the engineer and the conductor of this train both testified in the cause, and, while the record of the Supreme Court, of course, is not before us, we are inclined to think we can safely assume that the testimony was opposing, in the matter of the starting of said train, as to being usual or unusual; the plaintiff and the defendant having pleaded the same facts practically as to the number of cars and as to the train having been loaded as to freight, and that the same was required to start upon an upgrade, the former alleging that the starting of the train was negligence, stating the circumstances, the defendant railway

company replying "that the jerk and the starting of the train on that occasion was not unusual * * * at that place."

We hold under the evidence in this case, in view of the fact that the railway company did not attempt to negative or deny the testimony of the appellee and his witness, as to the extraordinary bump of said train (which is tantamount to an "unusual" bump), that the case of Railway Co. v. Stone, 125 S. W. 587, is pertinent to the question involved here. The court in that case said: "The testimony, being uncontradicted, established the fact that Mrs. Stone was a passenger in a coach of appellant; that the car was moved with sufficient violence to hurl Mrs. Stone against the arm of the chair she was occupying and other passengers to the floor of the car. No explanation of the shock received by the car was made by appellant. The car was its property, which it knew was occupied by its passengers, and the car was moved in such manner as to evidence carelessness and a disregard for the safety and comfort of the occupants. When these facts appeared, a prima facie case of negligence was shown, and the burden rested on appellant to show the circumstances that would exonerate it from blame in that connection." The testimony in this cause discloses that this extraordinary bump was caused by appellant's car or·cars moved by its engine for the purpose of making a coupling, and the fact of it having been a mixed train is not so significant on account of the impact as the starting of the train in the Copeland Case with eight or ten loaded freight cars on an upgrade. At any rate, in the absence of any countervailing testimony, we think the trial court could do nothing else than assume the negligence of the defendant under this state of the record. In the Stone Case the moving of the car against the one in which plaintiff was seated seems to have been more violent than the case here, but we are unable to see, in the absence of any contradiction, why the principle enunciated there should not be applied here; the trial court in that case having peremptorily instructed the jury that the railway company was negligent, the Supreme Court denying a writ of error upon that question. Appellant's assignment on this question is overruled.

[2] Second. The appellant assigns error as to the action of the court in permitting certain witnesses to testify that the general reputation of the plaintiff in the community in which he lived was good on the ground that the defendant had not impeached the plaintiff and had not put his character in issue: the bill of exceptions raising this question was approved by the trial court, "with the qualification that the reputation of plaintiff had been attacked, the defense being that he was not injured." As stated, the appellant did not contradict the appellee's contention as to its negligence in the sudden movement

of the train, and the plea of contributory negligence was clearly eliminated from the cause, and upon the facts there remained the only questions of the negligence of the appellant producing appellee's injuries and the extent of same. A consideration of the testimony of the numerous witnesses of appellant, including the doctor's and the physical demonstrations of its attorney with some of the physicians while upon the stand, coupled with the interrogations by the attorney of said physician, clearly raises the issue that appellee was malingering, which we think, under the rules with reference to impeachment, was such an attack upon plaintiff's character as to justify the testimony as to appellee's good reputation, and under this evidence clearly distinguishable from the cases cited by appellant. Railway Co. v. Raney, 86 Tex. 363, 25 S. W. 11; Houston Electric Co. v. Faroux, 125 S. W. 924; Railway Co. v. Weideman, 62 S. W. 810. In the Raney Case, supra, 86 Tex. 366, 25 S. W. 13, decided by Justice Brown, in passing upon testimony of this character, and permitting it, he said: "Where the character of the witness is impeached by matter brought out on cross-examination, or by evidence aliunde as to character, the witness may be sustained by evidence of good character; but it must in either case amount to an impeachment of the character of the witness for truth. * * * Under the rule above stated, we hold that when the defendant called out on cross-examination of the plaintiff matter irrelevant to the issues being tried (that is, as to who dressed his arm), and then proceeded to make an issue as to whether or not the plaintiff did not write the receipt that he claimed to have been written by McReynolds, defendant made an attack upon the character of plaintiff for truth as well as for honesty, and the evidence was intended to impeach his character for truth."

[3] Third. Appellant contends that the trial court erred in the submission of the fifth paragraph of the main charge to the jury upon the complaint that the testimony showed that two physicians attended plaintiff and treated him, but the testimony only shows the value of the services of one physician, and the court should have limited the recovery in this respect to the value of the services only of that physician. The petition alleged $150 as the amount recoverable for medicines and physicians' services, and the charge of the court limited the jury to the amount claimed in the petition. There is testimony of an expenditure for medicines (of an unsatisfactory character, but with reference to which there is no complaint) which, with the certain testimony as to the value of the services of one of the physicians, approximates so closely in amount to the $150 alleged that the difference is insignificant, and the appellant did not submit a special charge to the court upon the particular point as to any limitation to the jury, neither does it complain as to the charge of the court to the jury in which he instructs them not to exceed the amount claimed in the petition.

[4] Appellant also asserts that the sixth paragraph of the main charge of the court on the matter of damages was misleading and permitted a recovery of double damages. The fifth paragraph submits specifically the measure and elements of damage recoverable, and we think that the sixth paragraph complained of, in which the court says, "If you find for plaintiff under the instructions heretofore given you, you will allow him such damages * * * as seem to you to be right and proper under all the facts and circumstances in evidence," immediately succeeding the fifth paragraph, is such an inferential reference to the fifth paragraph and not containing any different measure of damages that the two charges should and would be read together.

We overrule all assignments and order the affirmance of the judgment of the trial court.

### On Motion for Rehearing.

[5] Appellant, in the written argument upon rehearing, in discussing its third assignment of error, says: "From the fact that the court does not allude to this assignment in the opinion, it occurred to us that it may have been overlooked." The assignment is addressed to the third paragraph of the main charge of the trial court in which the jury is instructed in effect that a railway company, in the management of its trains, is required to employ skillful and competent agents, assailed upon the ground that the submission was upon a matter not pleaded, and without evidence to support it. The original opinion, upon the issue of negligence, assumes that issue proven, upon the unassailed evidence in the case, no explanation whatever in the record of the unusual "bump" having been made by the defendant; and we regarded a discussion of the third assignment unprofitable and unnecessary, and the error, if any, an immaterial one in view of the affirmance of the case.

The motion is overruled.