Humphrey M. Chesnut, Appellee, v. Louisville and
Nashville Railroad Company, Appellant.

Term No. 48F6.

Opinion filed September 29, 1948. Released for publication October 28, 1948.

WILTON D. CHAPMAN, of St. Louis, Mo., and HAROLD BALTZ, of Belleville, for appellant.

F. E. MERRILLS, of Belleville, and SOL ANDREWS, of Chicago, for appellee.

MR. JUSTICE BARDENS delivered the opinion of the court.

On the trial of an action at law brought in the circuit court of St. Clair county, Illinois by plaintiff appellee, Humphrey M. Chesnut (hereinafter referred to as plaintiff) against defendant appellant, Louisville & Nashville Railroad Company, a corporation (hereinafter referred to as defendant) for recovery of damages on account of injuries alleged to have been sustained by him while in the employ of said defendant

in the capacity of brakeman and engaged in a switching operation at Athens, Tennessee, the trial court, upon motion of plaintiff at the close of all the evidence, instructed said jury that under the law and evidence the plaintiff was entitled to a verdict, informing the jury that the only question for their determination was the amount of damages, if any, the plaintiff was entitled to by reason of the alleged injuries in this case. A verdict was thereafter returned by the jury, finding the issues in favor of the plaintiff and assessing his damages at the sum of $20,000. Prior to the instruction for a verdict in his favor plaintiff had withdrawn count I of the complaint charging violation of the Federal Safety Appliance Act which left only count II in the complaint, charging negligence under the Federal Employers' Liability Act. Motions by defendant for judgment notwithstanding the verdict, and for a new trial, were overruled by the court, and judgment entered on the verdict.

No occurrence witnesses, outside of the plaintiff, were called by either side. From the testimony of the plaintiff it appears that by the switching operation in which he was engaged at the time he was injured there was to be detached from a string of four cars being pushed by the engine, the car farthest removed from the engine, and this car was to be set on what is known as the "middle track"; that pursuant to an arrangement previously had between himself and the head brakeman he, plaintiff, was to throw the switch and "ride the car" to the point at which it was to be placed on said "middle track"; that under said arrangement it was the duty of the head brakeman to "lift the pin" of the coupling connecting said car with the one next thereto; that he, plaintiff, did so throw the switch and then climbed up on said car, first on the side ladder; thence onto the end ladder and from there stepped over onto what is known as the "brake platform," took the slack out of the hand brake of the

car, set the "dog" on the ratchet gear and stepped back onto the end ladder and took hold of the "grab iron" on the car; that thereafter, within a few seconds, he heard the slack "run out" and for some reason, unknown to him, the pin apparently was not lifted and the car on which he was riding did not become separated from the others; as a result all of the cars, including the one he was on, stopped "all of a sudden," jerking him off said car. From such fall plaintiff sustained severe injuries.

Paragraph 7 of count II is the paragraph that sets out the charges of negligence. Subparagraph (a) is a general charge; subparagraph (b) alleged that the defendant negligently operated the locomotive and cars in a violent and forceful manner, and subparagraph (c) that the defendant negligently stopped the cut of cars in a sudden and violent manner so that the plaintiff was thrown off. As to these charges there is no evidence of facts to sustain them because there is no evidence as to the speed at which the cars were moving, or that the stop was unusual—the only evidence in this regard being that the train stopped suddenly and jerked plaintiff off the car on which he was riding. In this connection, plaintiff testified that "the rule of the L. & N. with respect to a brakeman is that he must have sufficient hold to play safe so it wouldn't 'jerk you loose', and 'the next thing you do is get a substantial hold at the place where you won't be jerked off which is, customarily, on the ladder.'" Subparagraph (d) alleged defendant negligently failed to disconnect the car upon which he was riding in accordance with the custom and usage of the business. As to this allegation plaintiff states that he did not see the other brakeman who was supposed to cut the car off and didn't know, of his own knowledge, "what he did or didn't do," and therefore the question of whether there was negligence in this regard is left to inference. No proof having been introduced by plain-

tiff tending to show why the pin was not lifted, it is as reasonable an inference that what was done was in the exercise of due care as that it was negligently done. For instance, plaintiff testifies, in connection with the switching operation just prior to the one in question, the train crew were required, on orders from the operator, to remove to another track a car which they had just placed on what is known as the "Spring track." If we are to draw inferences as to what might have caused the sudden stopping of the four cars being handled at the time of plaintiff's injury it could well be that even after the switch had been thrown by plaintiff, and after he had taken his position on the car, the conductor, for good reason, decided the car should be placed elsewhere and, accordingly, signalled the engineer to stop and for this reason, rather than failure of the other brakeman to "lift the pin," the car on which plaintiff was riding was stopped. Such an inference, coupled with the lack of evidence that the stop was made with unusual force or violence, and the lack of evidence that plaintiff was not notified of the change in switching plans appears to us to be reasonable and justifiable and, it being in defendant's favor, would preclude the giving of a peremptory instruction against it.

As to the last subparagraph, namely, (e) charging failure to warn plaintiff that the car would not be cut off plaintiff admits in his brief that he has introduced no evidence sustaining this charge.

The net result, therefore, of plaintiff's evidence leaves the whole matter of any charge of specific negligence to inferences just as consistent with due care on the part of the defendant as with negligence. In none of the cases cited by plaintiff in support of the peremptory instruction given in his favor was the court required to draw inferences in favor of the party moving for the directed verdict. As a matter of fact, none of said cases were negligence cases, except one,

to-wit, *Rack v. Chicago City Ry. Co.*, 173 Ill. 289, and in this case an instruction for a directed verdict in defendant's favor was given. Having failed to prove specific negligence, as charged, the only basis for the peremptory instruction in plaintiff's favor rested upon the charge of general negligence in subparagraph (a), together with the benefit of the doctrine of *res ipsa loquitur*. This doctrine has been held, in several cases, to apply to an action by an employee under the Federal Employers' Liability Act. *(Chesapeake & O. Ry. Co. v. Smith,* 42 F. (2d) 111, certiorari denied 282 U. S. 856; *Nashville, C. & St. L. Ry. Co. v. York,* 127 F. (2d) 606.)

It seems doubtful whether the doctrine is applicable in this particular case because the doctrine is applied as a matter of necessity and is based upon the theory that the defendant has, within his knowledge and control, evidence which plaintiff does not possess and cannot conveniently obtain. In the case at bar there is no reason shown why plaintiff could not have produced the evidence of the other members of the crew to have given the court and jury the benefit of testimony of acts or omissions by them, and it cannot be said that this evidence was any more readily available to the defendant than it was to the plaintiff. However, if the doctrine is applicable to this case it does not aid the plaintiff in support of the peremptory instruction given by the court for the reason that the overwhelming weight of authority, both in Federal courts and State courts, holds the doctrine of *res ipsa loquitur* allows inferences of defendant's guilt, but does not compel such inference or, in other words, the doctrine will permit the plaintiff to take his case to the jury and allow the jury to draw inferences of defendant's guilt, but will not support, or compel, a directed verdict. (See A. L. R. notes 167 A. L. R. 658, 153 A. L. R. 1134, 53 A. L. R. 1434, and *Sweeney v. Erving,* 228 U. S. 233.)

In actions in State courts, based upon the Federal Employers' Liability Act, the law announced by the Federal courts that bears upon said statutes is controlling. (*Kusturin v. Chicago & A. R. Co.*, 287 Ill. 306, and *Howard v. Baltimore & Ohio Chicago Terminal R. Co.*, 327 Ill. App. 83.)

Inasmuch, therefore, as the law announced by the Federal courts with relation to the doctrine of *res ipsa loquitur* does not permit a directed verdict in favor of the plaintiff, as above pointed out, it was reversible error for the lower court to give the peremptory instruction taking away from the jury the question of liability.

Since this case must be reversed and remanded for a new trial on the ground stated we deem it unnecessary to discuss the other assignments of error.

*Reversed and remanded.*

CULBERTSON, P. J., and SCHEINEMAN, J., concur.