**MORRIS v. TEXAS & N. O. R. CO.**

No. 4948.

Court of Civil Appeals of Texas.

Beaumont.

April 15, 1954.

Rehearing Denied May 26, 1954.

Helm Jones, Houston, for appellant.

Cecil, Keith & Mehaffey, Beaumont, for appellee.

WALKER, Justice.

The action is for damages for personal injuries and was brought under provisions of the Federal Employers' Liability Act, namely, Section 51, Title 45, U.S.C.A. and related statutes. The appellant Morris is plaintiff and the appellee Texas and New Orleans Railroad Company is defendant.

The only witness who testified about the occurrence in which plaintiff was injured was the plaintiff himself. According to his testimony, this event happened at a stop called Raywood which was on defendant's line of railway between Houston, Texas,

and Beaumont, Texas, and it occurred on the evening of September 16, 1952, between 7:30 o'clock and 9:05 o'clock. These were the hours at which the train arrived and departed from Raywood, respectively. The description of the handling of the train at Raywood and of plaintiff's conduct after the coupling shows that the event probably occurred about 8:00 o'clock P.M. The plaintiff was in defendant's employ and was serving as conductor on a freight train bound eastward from Houston to Beaumont. This train included cars destined for Raywood, and on arriving at this place the train was stopped and then divided into two sections, one of which was left motionless on the main track. This was the back part of the train and attached to its rear was the caboose. The other part of the train included the cars for Raywood and it was pulled away eastwardly by the engine; and after the cars for Raywood had been set out on a side track, the remainder, consisting of the engine and two cars loaded with lumber, then moved backward down the main track and were coupled with the cars left standing. The plaintiff said that before this coupling was made he had been at work at his desk in the caboose preparing some records and had completed this task, left his desk and arrived at the front door (the east door) of the caboose, intending to go out and assist the rest of the crew in performing their duties, and that when he was at this door the coupling was made with such force that it knocked him down and threw down and threw about the furniture in the caboose. He said that he was made unconscious by his fall. He said that it was an unusual occurrence; and Rule 837 of the defendant's rules governing the operation of the train provides: "Switching must be carefully done, and trains and engines must be carefully handled, to avoid shocks from abrupt starting or stopping; from impact in making couplings, and to prevent personal injuries, and damage to cars or contents, or engines." He said further that an engineer signals his intention of recoupling the parts of the train by sounding the whistle on the locomotive but that he, the plaintiff, heard no sound from the whistle before the coupling was made. The plaintiff said that he was made unconscious by his fall. He was discovered by a member of the crew and after he regained consciousness was taken to a physician at Daisetta who seems to have treated a slight wound on his head. He then returned to his train and the train left Raywood.

Plaintiff's cause of action was founded on negligence, and as negligence he alleged various specific acts and omissions in making the coupling as it was made, all of which, except, perhaps, one (failing to have the brakes of the locomotive in repair) refer to the conduct of some one or more of the rest of the train crew.

The defendant plead the general denial.

The cause was tried to a jury who found that the engineer had permitted the front part of the train to strike the motionless part with "unusual force" and who assessed plaintiff's damages at $15,000. However, the jury found in defendant's favor all of the Special Issues concerning negligence toward plaintiff. Other special issues were submitted but need not be summarized.

On this verdict the trial court rendered judgment in defendant's behalf, that plaintiff take nothing; and from this judgment the plaintiff has appealed.

## Opinion

(1) It is necessary to state some of the evidence before discussing plaintiff's Points of Error.

The plaintiff had been in railroad service, both freight and passenger service, for a little more than 11 years prior to the incident of September 16, 1952.

The train crew consisted apparently of six men, to-wit, a conductor, an engineer and presumably a fireman, and three brakemen. One of these brakemen, called by plaintiff the swing brakeman, was charged with getting the cars for Raywood out of the part of the train pulled away by the engine and with getting them into the side track where they were left; and it seems next to have been his duty to direct the

backward movement of the engine and its attached cars so as to make a proper coupling with the part of the train left standing. However, if it was not the swing brakeman's duty to direct this coupling, this was a duty of one of the three brakeman. The method used for directing such coupling was by hand signal by the brakeman, and lanterns were used in making such signals. These signals were made to the engineer, to enable him to control the movement of his locomotive.

The plaintiff testified as follows concerning the reason for the coupling having been made as it was: "Q. If the brakes had been put on in time, would it have happened? A. No, sir. Q. What caused that accident?—What caused the accident? A. The brakeman either did not give the proper signal or if he did, the engineer did not heed the signal."

This quoted testimony was an opinion because the plaintiff did not see, and therefore did not know, how the coupling was dealt with. Nevertheless, as we have stated, he had had more than 11 years of experience and this quoted testimony does indicate possible causes for the manner in which the coupling was made and in so doing it is in accord with the testimony about the method for making such couplings.

There was no other explanation in proof for the way in which the coupling was made.

(2) Issue 5 inquires about certain conduct of the engineer and whether the engineer was negligent respecting this conduct. These issues and the answers thereto were:

"Special Issue No. 5

"Do you find from a preponderance of the evidence that the engineer of the defendant's locomotive, at the time and on the occasion in question, permitted the locomotive and the cars attached to it to strike the string of six cars and the caboose with unusual force? Answer 'yes' or 'no'."

Answer "Yes".

"If you have answered the preceding Special Issue No. 5 'yes', and only in that event, then answer:

"Special Issue No. 6

"Do you find from a preponderance of the evidence that the act, if any, was negligence as that term has been defined to you herein? Answer 'yes' or 'no'."

Answer "No".

Issues 1 and 3 and the answers thereto were:

"Special Issue No. 1

"Do you find from a preponderance of the evidence that immediately prior to the occurrence in question the engineer of defendant failed to make such application of the brakes on the locomotive as would have been made by a person of ordinary prudence in the exercise of ordinary care under the same or similar circumstances? Answer 'yes' or 'no'."

Answer: "No".

"Special Issue No 3

"Do you find from a preponderance of the evidence that immediately prior to the occurrence in question, the engineer of defendant's locomotive failed to maintain such lookout as would have been maintained by a person of ordinary prudence in the exercise of ordinary care under the same or similar circumstances? Answer 'yes' or 'no'."

Answer: "No".

Issues 6, 1, and 3 were the only Special Issues submitted concerning negligence by defendant; and Issue 5 was the only Special Issue submitted regarding conduct by defendant's agents.

(3) Under Point 1 plaintiff argues that the answer to Issue 5, finding that the engineer had "permitted" the locomotive and attached cars to strike the standing part of the train with "unusual force," convicted that employee of the defendant, and thus, the defendant, of negligence as a matter of law which was, also as a matter

of law, a proximate cause of the plaintiff's injuries. Accordingly, says plaintiff, the findings returned to Issues 6, 1 and 3 should have been disregarded pursuant to the plaintiff's motion.

Plaintiff also argues under this Point of Error that the testimony of the plaintiff, which, as we have stated, was not contradicted, was such that, despite plaintiff's interest, it must be taken as true and that it demonstrated negligence by the engineer and also proximate cause as a matter of law. This argument of the plaintiff emphasizes the defendant's failure to call any members of the train crew as witnesses. The defendant in reply says that plaintiff's credibility was a matter for the jury. Insofar as this argument is limited to plaintiff's testimony that the coupling was made with great force and that this was unusual, the finding under Issue 5 took the place of this evidence and the argument is immaterial. Such evidence adds nothing to the finding and serves no purpose apart from the finding except to explain what the finding means, for it appears from said finding and that assessing plaintiff's damages at $15,000 that the jury believed plaintiff's description of the force attending the making of the coupling. However, plaintiff testified to other circumstances and these are referred to below in another connection.

■ The question raised by the arguments just stated is, whether the trial court should have disregarded the answer to Issues 6, 1, and 3 and should have entered judgment for plaintiff on the finding under Issue 5. In considering this question it is to be borne in mind that the answers to Issues 6, 1 and 3 may be no more than findings that a preponderance of the evidence failed to show (as distinguished from findings that the conduct did not occur) that the engineer was negligent in permitting the coupling to be made with unusual force, that he failed to make a proper application of the brakes and that he failed to maintain a proper lookout. That is these may be no more than findings that the burden of proof had not been met. We hold that these

findings, so construed, are supported by the plaintiff's testimony and that the trial court therefore properly refused to disregard them.

In the first place, the jury could have believed that the brakeman whose duty it was to signal the engineer may, by failing to give a proper signal, just as well have caused the coupling to be made with unusual force as may have the engineer; and since these three special issues inquired about the engineer and not about the brakeman the jury would have been justified in answering these issues as they did. For they could have believed and found that the plaintiff did not meet the burden of proof respecting the engineer's conduct because it was equally probable that somebody else, namely, the brakeman, caused the bad coupling. So, the engineer may have permitted the coupling to be made with unusual force, as was found under Issue 5, and yet not have been negligent. These comments are not inconsistent with the finding made under Issue 8, submitting the question of unavoidable accident because that finding, too, may be no more than one that the burden of proof was not met.

■ In the second place, putting aside the evidence about the brakeman and his signals and disregarding the possibility that other members of the crew took part in the operation, the single fact that a coupling was made with unusual force and was an unusual event does not necessarily and inevitably produce the conviction that the engineer was negligent. The movement of a train of cars involves the exercise of judgment by the engineer, and the engineer's judgment will be affected by various factors, such as the length of the train of cars he is moving and the fact that these cars are loaded or empty, by visibility, and by the grade and direction of the track. In such a case it seems wrong to make the engineer and his employer absolute insurers against a mistake by the engineer; there is room for a mistake by this man which is not negligent, and Rule 837, quoted above, does not purport to make the engineer an insurer. The

engineer's situation is not like that of the conductor in International Great Northern R. Co. v. Hawthorne, 131 Tex. 622, 116 S.W.2d 1056, where the conductor simply misread his timetable. Of course, the evidence in a particular case may be sufficient to show as a matter of law that the coupling was negligently made by the engineer; but the evidence in this case is wholly circumstantial and other than the fact that the coupling was made with great force and was an unusual occurrence shows only the following: (a) the engineer was moving backward, pushing two cars loaded with lumber and the coupling must have been made about 8:00 P.M., that is, at night. (b) The plaintiff said that the coupling could have been made without the exercise of such force and that the coupling was improper, and this testimony must have been true. It may be assumed that this evidence raised the issue, whether the engineer was negligent; and the defendant does not argue that it did not. However, we hold that this evidence did not prove the engineer negligent as a matter of law. The decisions cited by the plaintiff do not so hold and we have seen none so holding.

Point 1 is overruled. These conclusions also require us to overrule Points 4, 5, 6 and 7.

■ Points 2 and 3 assign error to the submission of Special Issue No. 8 and to the jury's answer thereto. Issue 8 submitted the question of unavoidable accident and the jury answered this issue in defendant's favor. Under our conclusion regarding the Points of Error just discussed Issue 8 was immaterial to the judgment and Points 2 and 3 may be overruled on this ground. The submission of this issue did the plaintiff no harm even though the evidence may not have justified its submission. As we construe the finding it may have been no more than one that the burden of proof was not met; it does not necessarily mean that the jury found that the improper coupling really was an accident. Concerning the significance of negative findings made to special issues like Nos. 6, 1, 3, and 8 see Traders & General

Ins. Co. v. Jenkins, 135 Tex. 232, 141 S.W.2d 312; Southern Pine Lumber Co. v. King, 138 Tex. 473, 161 S.W.2d 483.

■ Point 8 assigns as error that one of the jurors was prejudiced against one of plaintiff's attorneys. This point is overruled. The evidence concerning it raised issues of fact which the trial court has resolved in defendant's favor, and these findings support the order.

The comments adjudicate all Points of Error assigned. All Points of Error having been overruled, the judgment of the trial court is affirmed.

## On Motion for Rehearing

■ Concerning Ground IX:—The plaintiff was familiar with the procedure followed by the members of the crew in making a coupling such as that involved in this suit, and with the duties of the members of the crew who were to perform this procedure. The procedure is described in our original opinion; it consisted of the operation of the locomotive and the movement of the attached cars by the engineer at the signal of, and in accordance with the signal of the brakeman. Procedure and duties were fixed, definite and certain and evidently were established before the coupling was made, and thus were circumstances which authorized the jury to infer that the train crew followed this procedure in making the coupling which injured the plaintiff, even though no eyewitness testified as to what was actually done in making this coupling. See Greenleaf on Evidence, 16th Ed., Vol. 1, Sec. 14–J; Wigmore on Evidence, 3d Ed., Vol. 1, Sec. 92 et seq.; 31 C.J.S., Evidence, § 180, page 881. The plaintiff's opinion, that the particular coupling was caused either by the brakeman's improper signal or by the engineer's failure to heed the signal, pointed out how the normal procedure could fail; and we have given it that significance.

■ Concerning Ground XI:—In response to Issue 5 the jury have found that the engineer *permitted* the coupling to be made with unusual force. The verb *permit*

has been given different meanings according to the nature of the question and the circumstances before the court in the particular case. It has been held to imply knowledge or a consent of the mind, but the plaintiff charged the defendant with simple negligence, not with a wilful act or with gross negligence, and the trial court's charge submitted only simple negligence. These circumstances are to be borne in mind in determining what meaning *permitted* has in Issue 5, and we construe it as meaning no more than *failure to prevent,* and it is improbable that the jury gave it a different construction. The finding under Issue 5 does not mean that the engineer wilfully made the collision with unusual force or that he operated his locomotive with the knowledge and disregard for consequences which are involved in gross negligence. The jury only found that the coupling had been made in a certain way; the cause for this having been done is not implied in their finding.

Concerning Ground XIII and related grounds:—We decline to hold that the fact that the coupling was made with unusual force proves as a matter of law that the engineer (or, if Issue 6 was not limited to the engineer, the defendant generally) was negligent; the question of negligence was for the jury. To go further under the evidence before us (and we put aside and exclude from this evidence the testimony about the procedure for making the coupling and the way in which it might fail which is mentioned above in connection with Ground IX) would be inconsistent with the rule of decision of the Federal Courts concerning the weight ordinarily to be given evidence making applicable the rule res ipsa loquitur.

In Sweeney v. Erving, 228 U.S. 233, 33 S.Ct. 416, 418, 57 L.Ed. 815, 819, the court held that evidence making applicable the rule res ipsa loquitur did not change the burden of proof from the plaintiff to the defendant, and at page 240 of 228 U.S., at page 418 of 33 S.Ct., at page 819 of 57 L.Ed. said: "In our opinion, res ipsa loquitur means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict." This language expresses the present rule of decision. See Jesionowski v. Boston & Maine Railroad, 329 U.S. 452, 67 S.Ct. 401, 91 L. Ed. 416; Johnson v. U. S., 333 U.S. 46, 68 S.Ct. 391, 92 L.Ed. 468. These several decisions support the following statement of the rule of decision made in Long v. Union Pacific R. Co., 10 Cir., 192 F.2d 788, at page 789: "As applied in Federal courts to cases arising under the Federal Employers' Liability Act, res ipsa loquitur has been lately defined to mean that the facts of the occurrence warrant, but do not compel, an inference of negligence. It is not necessary that the facts be explicable only in terms of negligence. It is sufficient if they are such as to fairly support an inference of negligence. * * * Thus, if an accident, caused by an instrumentality within the control of the defendant, would not ordinarily have occurred in the exercise of due care, the trier of the facts may, but is not required to, conclude that the accident and resulting injury was caused by the negligence of the defendant."

The action under review is based on Section 51 and related provisions of the Federal Employers' Liability Act and the sufficiency of the evidence to raise a question for the jury, and thus to require a trial by the jury, is not matter of procedure but is matter of substance and a Federal question and is to be determined by the Federal rule of decision. See Chicago, Milwaukee & St. Paul Ry. Co. v. Coogan, 271 U.S. 472, 46 S.Ct. 564, 70 L.Ed. 1041; Western & Atlantic R. Co. v. Hughes, 278 U.S. 496, 49 S.Ct. 231, 73 L.Ed. 473; Brady v. Southern R. Co., 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239; Texas & P. Ry. Co. v. Younger, Tex.Civ.App., 262 S.W.2d 557, at page 561. For this reason a state statute creating a presumption of negligence on proof of an

injury by a railroad engine has been held inapplicable in an action brought in the courts of that state. New Orleans & N. E. R. Co. v. Harris, 247 U.S. 367, 38 S.Ct. 535, 62 L.Ed. 1167; Yazoo & M. V. R. Co. v. McCaskell, 118 Miss. 629, 79 So. 817. And it has recently been held that the Federal rule as to the weight of proof making applicable the rule res ipsa loquitur which we have stated should be applied in the state court in behalf of the defendant employer. Chesnut v. Louisville & N. R. Co., 335 Ill. App. 254, 81 N.E.2d 660. We are, therefore, of the opinion that this Federal rule of decision should be applied by us in litigation under Section 51 of the Federal Employers' Liability Act, and that the rule of decision independently announced by the courts of this state is not applicable if it differs from the Federal rule.

Plaintiff cites Ft. Worth & D. C. Ry. Co. v. Stalcup, 167 S.W. 279, 284, where a brakeman was thrown from his car by a sudden stopping of the train of cars, and emphasizes this statement by the Court of Civil Appeals: "If the stop was made as the jury found, it was negligently made." We note that in Quanah, A. & P. Ry. Co. v. Johnson, 159 S.W. 406, which was a suit by a passenger for personal injuries caused by an improper coupling, the Court of Civil Appeals seems to have made a holding analogous to that for which the plaintiff here contends; but regardless of the merits of the holding, on which we express no opinion, the case did not involve a Federal question; and the decision cited by the plaintiff, Ft. Worth & D. C. Ry. Co. v. Stalcup, may be distinguished. The proof made there was in much greater detail than that made in the case under review, and the Federal rules of decision which we have cited above were not mentioned. Furthermore, the language which the plaintiff emphasizes was only a dictum; the question was, whether there was evidence of negligence, not whether negligence had been proved as a matter of law.

■ Concerning Grounds XVI and XVII:—Whether the submission of an issue not pleaded or proved is reversible error depends on the harm done by it. T.

R. 434. See the following opinions of the San Antonio Court of Civil Appeals: Fisher v. Leach, 221 S.W.2d 384, at page 390; H. E. Butt Grocery Co. v. Johnson, 226 S.W.2d 501, at page 503, et seq.; Texas Employers' Ins. Ass'n v. Hudson Engineering Corp., 245 S.W.2d 523, at page 525. And see generally: 3 B Tex.Jur. 700, Sec. 1053. We remain of the opinion that the submission of the issues concerning unavoidable accident did plaintiff no harm.

Concerning Ground XVIII:—To the decisions cited in our original opinion we add this court's opinion in Gulf States Utilities Co. v. Grubbs, Tex.Civ.App., 44 S.W.2d 1001, at page 1002 (syl. 5, 6).

The motion for rehearing is overruled.