Billy Charles **CARPENTER** et al., Appellants,

v.

Celsa **JONES** nee Esparza et al., Appellees.

No. 5920.

Court of Civil Appeals of Texas.

El Paso.

Feb. 21, 1968.

Rehearing Denied March 20, 1968.

Edwards, Belk, Hunter & Kerr, El Paso, for appellants.

Lee Chagra, James L. Gallagher, Scott, Hulse, Marshall & Feuille, El Paso, for appellees.

## OPINION

CLAYTON, Justice.

Suit here was brought by Celsa Jones nee Esparza, plaintiff-appellee, against Julia Sue Glover Mottinger, one of the appellees herein, and Billy Charles Carpenter and Employers Casualty Company, appellants herein. Appellants' statement of the nature and result of the case has been accepted by all parties. It reads as follows:

"Appellee, CELSA JONES, nee ESPARZA, as plaintiff, sued appellants, BILLY CHARLES CARPENTER and his employer, EMPLOYERS CASUALTY COMPANY, together with appellee, JULIA SUE MOTTINGER, as defendants, as the result of a three-way collision claimed by plaintiff to have been caused by the joint negligence of all defendants.

"CARPENTER and EMPLOYERS CASUALTY COMPANY alleged that the damages were caused solely by the negligence of JULIA SUE MOTTIN-

GER against whom they asked for indemnity by way of cross-action.

"JULIA SUE MOTTINGER claimed all damages were occasioned solely by reason of the negligence of CARPENTER for whose conduct EMPLOYERS CASUALTY COMPANY was responsible on the doctrine of *respondeat superior*.

"The case was submitted to the jury on special issues and purporting to be based on their answers, the court rendered judgment for a total sum of $8,585.00 jointly and severally against CARPENTER and EMPLOYERS CASUALTY COMPANY alone and denied them any recovery against JULIA SUE MOTTINGER.

"The judge overruled their motion for new trial after amending the judgment to show voluntary remittitur by plaintiff of $200.00 occasioned by the jury's answer to Question No. 22A without any evidence to support it.

"CARPENTER and EMPLOYERS CASUALTY COMPANY timely filed their supersedeas bond payable to both plaintiff and JULIA SUE MOTTINGER and the case is now before this court."

For the purpose of this opinion and in the interest of brevity, appellee Celsa Jones, nee Esparza, will be hereinafter referred to as "Celsa Jones"; appellant Billy Charles Carpenter will be referred to as "Carpenter"; and appellee Julia Sue Glover Mottinger will be referred to as "Julia Sue Mottinger".

Specifically, the facts are that appellee, Julia Sue Mottinger, a student at Texas Western College, was driving in her car to the dormitory. She was proceeding south on Mesa Avenue in the City of El Paso, Texas, and stopped at a red signal light at the intersection of Mesa with College Avenue. When the signal turned green, she was the first car in line and turned right on College Avenue toward the College. College Avenue, at all points relevant to this case, was a through street controlled by stop signs at the other intersections, one of which was Oregon Street. Traffic was proceeding toward her in an easterly direction along this street and also going in the same direction as she, toward the college. Appellant Carpenter was stopped at the intersection of Oregon Street with College Avenue on the south side of the intersection, waiting for traffic to clear so he could cross the intersection. He had been proceeding in a northerly direction to return to the office of the Employers Casualty Company, where he was employed. Celsa Jones was stopped on the north side of Oregon Street at the intersection, also at a stop sign. She was a nurse and also a student at Texas Western College. Carpenter was stopped parallel to the car on his right which apparently had stalled at the intersection. It had been raining lightly and the pavement was wet. He started up and proceeded to attempt to cross the intersection, but misjudged that he had time to cross, and his car was struck about the middle of the intersection by the car driven by appellee Mottinger. The Mottinger vehicle stopped at about the point of collision, but the car of appellant Carpenter proceeded on across the intersection, forward and to his left, and struck the car in which Celsa Jones was seated. All cars were damaged. Julia Sue Mottinger and a passenger of hers got out of her vehicle and went over to the vehicle where Celsa Jones was seated. At that time Celsa Jones stated that she did not feel that she had been hurt, although she complained that she had been thrown against the steering wheel of her car.

A short time after the collision an employee of the appellant Employers Casualty Company appeared on the scene and requested all parties involved in the collision to come to the office of the company and give statements concerning the manner in which the collision took place. This the witnesses proceeded to do, and gave state-

ments on the dictaphone as to their versions of the cause of the collision. After Julia Sue Mottinger had given her statement at the office of the Employers Casualty Company, they agreed to, and ultimately did, pay her $178.00 for damages to her vehicle and also agreed to pay rental on an automobile for her to use while she was waiting for repairs to be made on her car. In her version of the incident she said that she was on College Avenue about half way between the intersections of Mesa and Oregon Streets, or perhaps a little closer to the Oregon Street intersection; that she was traveling about 20 miles an hour, the streets were damp, and because of oncoming cars she did not see the Carpenter vehicle until it was about in the middle of the intersection; that another car coming from Carpenter's left had to swerve around him to his rear, to avoid hitting him; that she laid down about 30 feet of skid marks before striking the Carpenter vehicle on the right rear between the rear tire and the rear of the car. Her car was towed away from the scene of the accident.

Suit was tried to a jury on special issues. Their findings were as follows: (1) that defendant Carpenter failed to keep a proper lookout on the occasion in question, and (2) that this constituted a proximate cause of the collision; (3) that defendant Carpenter failed to apply his brakes as a person of ordinary prudence would have done, and (4) that this was a proximate cause of the collision; (5) that Carpenter was driving at an excessive rate of speed under the circumstances, and (6) that this constituted a proximate cause of the collision. (7) that Carpenter failed to yield the right of way to Mottinger, and (8) that this constituted negligence, and (9) was the *sole* proximate cause of the collision involved. In the charge to the jury, the term "sole proximate cause" was defined as "the only proximate cause and if there is more than one proximate cause of an event, then no single proximate cause can be the 'sole proximate cause' thereof." Question No. 10 was unanswered, since it was predi-

cated upon a negative answer to Question No. 9. Question No. 11 inquired whether Julia Sue Mottinger failed to keep a proper lookout. The jury answered in the negative and therefore did not answer Question No. 12 which was predicated upon an affirmative answer to the preceding question. The jury replied negatively to No. 13, inquiring whether Mottinger failed to apply her brakes as a person of ordinary prudence would have under the circumstances, and therefore did not answer Question 14 which was predicated upon an affirmative answer to the preceding question. The jury further replied in the negative to Question No. 15 as to whether Mottinger was driving at an excessive rate of speed under the circumstances, and did not answer Question 16 which was predicated upon an affirmative answer to Question No. 15. It also answered in the negative to Question 17 as to whether Mottinger failed to yield the right of way at the time, and therefore did not answer No. 18, which was predicated upon an affirmative answer to the preceding question. The jury did answer Question 19 in the negative, although it was predicated upon an affirmative answer with regard to failure to yield the right of way. As to Question No. 20, they answered that failure to yield the right of way was not a proximate cause of the collision. In answer to Question 21, they stated that $385.33 was the reasonable cost of repairs to the Celsa Jones automobile, and in answer to Question No. 22, subdivision A, the jury answered that Jones had suffered damages of $200.00 for medical services and therapy to the time of the trial. This amount was remitted by appellee Jones, since it was in excess of the evidence given at the trial. Under Subsection B, the jury awarded Celsa Jones the amount of $3,000.00 for physical and mental pain and suffering up to the time of trial; and in Subsection C the jury awarded $5,000.00 for mental and physical pain and suffering which she would in all probability experience in the future. The court entered judgment in favor of Celsa Jones in a total amount of $8,585.00 against Carpenter and

Employers Casualty Company and denied them any recovery against Julia Sue Mottinger.

This case comes before us on an appeal from the judgment of the court, and is presented to us in ten points of error. The first is that the judgment in this case is unsupported by a verdict and, secondly, that the closing argument of plaintiff's counsel was so prejudicial as to require reversal of the case or at least a great reduction in the amount of damages awarded against the defendant-appellants. The third and fourth points of error attack the jury's finding of $3,000.00 in answer to Question 22B on the grounds that it was grossly excessive and so contrary to the weight of the evidence as to be clearly wrong. The fifth point of error states that there is no evidence to support the jury's finding of $5,000.00 as compensation to plaintiff for future pain and suffering in response to Question No. 22C, and the sixth point of error contends that the jury's finding of $5,000.00 was so contrary to the weight of the evidence as to be clearly wrong. The seventh point of error is that this answer was so grossly excessive as to indicate prejudice against appellant as an insurance company. Point of Error No. VIII is that the jury's finding that Carpenter's failure to yield the right of way to Mottinger was the *sole* proximate cause of the collision is so contrary to the evidence as to be clearly wrong, and in Point of Error No. IX, that the jury's failure to answer that Mottinger's failure to yield the right of way was contrary to the weight of the evidence and was clearly wrong, as was the jury's failure (Point X) to answer that Mottinger was traveling at an excessive rate of speed under the circumstances. It is the position of the appellants that the jury's answers to Questions 7, 8 and 9—that Carpenter failed to yield the right of way to Mottinger, that this was negligence, and that such negligence was the *sole* proximate cause of the collision complained of, whereas in answer to Questions 1, 2, 3, 4, 5 and 6 they found

that other acts of negligence of Carpenter were also proximate causes of the collision—created a conflict which nullified the verdict and left the cause without any proper jury's verdict and required reversal of the case. The alleged error complained of was probably caused by the wording of the issue in which the phrase "the sole proximate cause" of the collision was inadvertently used.

Appellants cite us to various decisions, the latest of which is Fort Worth & Denver City Ry. Co. v. Burton, 158 S.W.2d 601 (err. dism.) which was a 1942 Court of Civil Appeals decision in which it was held, on page 606, as follows:

"In response to one issue submitted the jury found that the collapse of the railroad bridge was the sole proximate cause of the death of Burton and Griggs. The appellant asserts such finding was in irreconcilable conflict with all the findings of the jury on proximate cause based upon appellant's negligence, thus nullifying the same and resulting in a judgment unsupported by a verdict. The appellant has properly preserved this point as vitiating the judgment. Although a single act or omission may constitute both the sole and a proximate cause of an event, it is equally true that there can be but one sole proximate cause of an injury. The very term 'sole proximate cause' impels this conclusion. The finding that the collapse of the bridge was the sole proximate cause of the injury might be reconciled with the finding of proximate cause in connection with the alleged improper construction of the bridge since its purported faulty construction and its collapse might have been coincident in nature in producing the injury, but such is not true with reference to the findings of proximate cause as to the failure to notify the deceased trainmen of the extent of the watershed and of the rainfall. Since these findings may not be reconciled with the finding on sole proximate cause, and particularly in view of the above holding as to the error in the submission of

the issue as to the improper construction of the bridge, we are compelled to sustain this assignment." (Citing cases).

In answer to appellants' contention, appellee Mottinger cites, among other cases, a 1960 Supreme Court case, Bradford v. Arhelger, 161 Tex. 427, 340 S.W.2d 772, in which a similar situation was discussed, and in which the court analyzed the cases of A.B.C. Stores, Inc. v. Taylor (1941), 136 Tex. 89, 148 S.W.2d 392, and Little Rock Furniture Mfg. Co. v. Dunn, 148 Tex. 197, 222 S.W.2d 985 (1949) which appeared in conflict with each other. In the Bradford case the Supreme Court repeated the rule laid down in the Little Rock case as the following:

> " 'To apply this test, the court must consider each of the answers claimed to be in conflict, disregarding the alleged conflicting answer but taking into consideration all of the rest of the verdict, and if, so considered, one of the answers would require a judgment in favor of the plaintiff and the other would require a judgment in favor of the defendant, then the answers are fatally in conflict. It is essential that the party seeking to set aside a verdict on the ground of conflict must be able to point out that one of the conflicting answers of the jury, in connection with the rest of the verdict except the issue with which it conflicts, necessarily requires the entry of a judgment different from that which the court has entered.' "

The court further said:

> "The result of a strict application of the Little Rock test to the jury findings in the case before us is that in three situations a judgment for the defendant would be required, but in the fourth situation no judgment could be rendered for either party. In the fourth situation, the only order that could be rendered would be one of mistrial. It is true that under no conceivable application of the test could a judgment be rendered for the plaintiff,

and it may be conceded that in approving the test announced in Howard v. Howard in the Little Rock case, the court was of the opinion that an application of the test would always result in resolving the findings so that in all instances a judgment could be rendered either for the plaintiff or the defendant. The instant case presents jury findings which clearly indicate that this particular concept was unsound. *To that extent the Little Rock rule must be qualified,* for we cannot permit a verdict to stand when the findings are in such conflict that an application of the Little Rock rule revelops a situation in which a judgment could not be entered for either party.

> "We conclude, therefore, that A. B. C. Stores, Inc. v. Taylor, was not overruled by Little Rock Furniture Mfg. Co. v. Dunn, and that consequently the decision here is ruled by the A. B. C. Stores case." (Emphasis supplied).

In passing upon the A. B. C. Stores, Inc. v. Taylor case, the Supreme Court (1941) made the following observation:

> "Ordinarily such finding of contributory negligence would require a rendition of judgment in defendant's favor. Southern Pine Lumber Co. v. Andrade, 132 Tex. 372, 124 S.W.2d 334.

> "The record shows, however, that the jury's finding, in effect, upon the issue of unavoidable accident was that the occurrence upon which recovery was sought was an accident. This finding, carrying with it, as it does, the further finding that neither plaintiff nor defendant was guilty of negligence, is in conflict with the finding that plaintiff was contributorily negligent, as well as with the finding that defendant was negligent.

> "The trial court should have sustained plaintiff's motion to return the jury to its room for further consideration of the charge, pointing out in this connection

(without comment) the issues the findings to which are in conflict; and should have denied defendant's motion to render judgment in its favor."

■ In applying the foregoing rules to the case at hand, we find that if we disregard the jury's answer of "sole proximate cause" (to Question No. 9), and consider the answer of the jury to other questions, of "*a* proximate cause", with which the answer to Question No. 9 is allegedly in conflict, no different judgment than that rendered by the court would be required. We therefore overrule the first point of error and hold that the judgment is supported by the verdict in favor of the plaintiff.

■ The argument of plaintiff's counsel, which is the basis for appellant's second point of error, as set out by the court in its Bill of Exceptions was as follows:

"Please remember that I will be back in this court in the future in other cases, and so will Mr. Edwards, but this is the last time that my client will be in court in connection with her injuries. She cannot recover any more than you will give her in the case regardless of whether her injuries prove to be more serious than now thought to be. If you should not give her enough the court cannot raise it, but if you give her a verdict that is too large the court can reduce it."

The court, after setting out the argument (which was not recorded by the court reporter) further observed that no objection was made to any of the argument of plaintiff's counsel. It occurs to us that consideration of this argument by the jury could have been eliminated under instructions of the court, had an objection to this argument been made at the time, and that appellant's silence waived the point or eliminated the possibility of remedying the error, if such it was. Appellant's Point of Error

No. II is overruled, and requires no reduction in the amount of damages awarded.

■ In Point of Error No. III we fail to find that the award, by the jury, of $3,000.00 as compensation to plaintiff for pain and suffering is grossly excessive. Point of Error No. IV is that this award is so contrary to the weight of the evidence as to be clearly wrong. In passing on this point we are guided by the directions contained in the Law Review article, " 'No Evidence' and 'Insufficient Evidence' Points of Error", 36 Texas Law Review 361, April 1960, in which the now Chief Justice of the Supreme Court, Robert W. Calvert, states: "If the finding of the existence of the fact, considering all of the evidence, is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust, the court should sustain the point and order a new trial; otherwise, the court should overrule the point and affirm." Under these instructions, we find that the holding of the jury does not require reversal, and therefore Points of Error Nos. III and IV are overruled.

■ In treating Points of Error Nos. V and VI, relating to the jury's finding of $5,000.00 for future pain and suffering, the same observations may be made, and these points are overruled. It should be observed that in Point of Error No. V, it is asserted that "There is no evidence to support jury's finding of $5,000.00 as compensation to plaintiff for future pain and suffering * * *" With reference to this point of error, the Law Review article of Chief Justice Calvert states that it is the duty of an appellate court to view the evidence in its most favorable light in support of the finding of a vital fact, considering only the evidence and the inferences which support the finding and rejecting the evidence and the inferences which are contrary to the finding. We have followed this rule in

reaching the conclusion above stated in Point of Error No. V.

■ Point of Error No. VII claims that the total verdict for the plaintiff is so grossly excessive as to indicate prejudice against appellant as an insurance company. We do not find from the record any merit in this contention and therefore overrule Point of Error No. VII.

Point of Error No. VIII attacks the finding of the jury that appellant Carpenter's failure to yield the right of way to appellee Mottinger was the sole proximate cause of the collision, stating that this finding is so contrary to the evidence as to be clearly wrong. We have previously observed that this finding was the result of the wording of the charge to the jury, and also that this finding may be ignored, considering the further findings of the jury in which it is claimed that this finding is in conflict. Point of Error No. VIII is therefore overruled.

■ Point of Error No. IX complains that the jury's failure to answer that appellee Mottinger did not keep a proper lookout is so contrary to the weight of the evidence as to be clearly wrong. Applying the rule laid out in Chief Justice Calvert's Law Review article, cited above, we find no basis for this contention, and it is also overruled.

The same applies to Point of Error No. X, that the jury's failure to answer that appellee Mottinger was traveling at an excessive rate of speed under the existing circumstances, is so contrary to the weight of the evidence as to be clearly wrong. This point of error is also overruled.

Having treated all points of error presented to us by appellants and having overruled the same, the judgment of the trial court is accordingly affirmed.